Paul Houston CAMERON, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00350–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 24, 1999.

Discretionary Review Refused
June 23, 1999.

Lawrence L. Garcia, Garcia, Teneyuca & Reznicek, L.L.P., Teresa A. Oxford, Law Office of Teresa A. Oxford, San Antonio, for Appellant.

Barbara Hervey, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice and KAREN ANGELINI, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

Paul Houston Cameron appeals his capital murder conviction. In eight points of error, Cameron argues that the trial court erred: 1) by failing to quash his indictment under article 32.01 of the Texas Code of Criminal Procedure as untimely; 2) by allowing the contents of a written statement which had defective warnings to be read verbatim by the detective who took the statement as an oral custodial statement of the defendant; 3) by admitting evidence of an extraneous offense which Cameron claims is irrelevant under Texas Rules of Evidence 402, 403, and 404(b); 4) by failing to quash the indictment and/or incorrectly charging the jury regarding the requisite mental state for the offense of capital murder; and 5) by admitting statements Cameron made to a jail psychiatrist which were not for the purpose of medical diagnosis. We affirm.

### I.

Cameron was charged with and convicted of capital murder in the death of Fabian Dominguez, a police officer. On January 14, 1995, Cameron, along with Johnathan Moore, Peter Dowdle, and Meredith Nichols, entered the home of Andrea Braden [1] with the intent to commit burglary. Absent Meredith Nichols, the parties embarked upon a second trip to the home in the early hours of the morning. While the parties' car was parked in the driveway, Officer Dominguez, off-duty but in uniform, noticed the activity and blocked the car's path with his personal car. Moore was in the front passenger seat of the car, Cameron was in the back seat, and Dowdle was driving. Officer Dominguez emerged from his vehicle blocking the driveway, and, according to Cameron's statement, with his gun pulled, approached the passenger side of the car. He instructed the boys to turn off the car and give him the keys, and Dowdle did so. Moore then shot Officer Dominguez. Moore got the keys, and then shot Officer

---

1. Braden is a friend of the parties who arranged for the burglary of her own home.

Dominguez several more times with the officer's own gun. Officer Dominguez died from his wounds.

On January 17, 1995, Cameron was arrested on the charge of capital murder. He was indicted on the charge of organized crime in conjunction with the death of Officer Dominguez on April 13, 1995. On October 5, 1995, Cameron was indicted on the charge of capital murder for the death of Officer Dominguez. Cameron was tried and convicted of capital murder, and sentenced to life in prison.

## II.

In eight points of error, Cameron alleges that the trial court erred: 1) by failing to quash his indictment under article 32.01 of the Texas Code of Criminal Procedure as untimely; 2) by allowing the contents of a written statement which had defective warnings to be read verbatim by the detective who took the statement as an oral custodial statement of the defendant; 3) by admitting evidence of an extraneous offense which Cameron claims is irrelevant under Texas Rules of Evidence 402, 403, and 404(b); 4) by failing to quash the indictment and/or incorrectly charging the jury regarding the requisite mental state for the offense of capital murder; and 5) by admitting statements Cameron made to a jail psychiatrist which were not for the purpose of medical diagnosis.

### A. Untimely Indictment

Cameron argues that the trial court erred by failing to quash his indictment under article 32.01 of the Texas Code of Criminal Procedure as untimely. He says that his indictment was untimely because, although he was arrested and charged with capital murder on January 17, 1995, he was not indicted on the charge of capital murder until October 5, 1995, which is in the fourth grand jury term following his arrest. The State's position is

that Cameron was timely indicted on the charge of organized crime in conjunction with the death of Officer Dominguez on April 13, 1995, and because Cameron was timely indicted for one crime arising out of the same criminal transaction, the second indictment for capital murder is controlled by the timeliness of the first indictment. Cameron filed a motion to quash the capital murder indictment on February 21, 1997. The trial court ruled that article 32.01, read in conjunction with article 28.061, was unconstitutional.

■■■ The trial court's ruling on the constitutionality of the provisions is a question of law which we review de novo. *Gonzalez v. State*, 938 S.W.2d 482, 484 (Tex.App.—El Paso 1996, pet. ref'd). We review mixed questions of law and fact which do not turn on an evaluation of credibility and demeanor de novo. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The fact of the dates of the arrest and indictments are not in dispute. We review the trial court's ruling de novo. *Frenzel v. State*, 963 S.W.2d 911, 914 (Tex.App.—Waco 1998, pet. requested). At the time of Cameron's arrest,[2] article 32.01 provided:

Defendant in Custody and No Indictment Presented.

When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of court which is held after his commitment or admission to bail.

Act of May 27, 1965, 59th Leg., R.S., ch. 722 § 1, 1965 Tex. Gen. Laws 317, 441, (amended 1997) (current version at Tex.Code Crim. Proc. Ann. art. 32.01 (Vernon Supp.1999)).

---

**2.** Article 32.01 was amended effective May 26, 1997. The amended statute provides, in pertinent part, that the change in the law effected by the amendment *"applies only to the prosecution of a defendant arrested for an offense on or after the effective date of this Act. The prosecution of a defendant arrested before the effective date of* this Act is covered by the law in effect when the arrest occurred, and the former law is continued for that purpose." Tex.Code Crim. Proc. Ann. art. 32.01 historical note (Vernon Supp.1999) [Acts 1997, 75th Leg., ch. 289 § 4]. Since Cameron was arrested on January 17, 1995, our inquiry is governed by the former statute.

The term of court for the 290th District Court is statutorily defined:

(a) The 290th Judicial District is composed of Bexar County.

(b) The 290th District Court shall give preference to criminal cases.

(c) (Repealed 1997)

(d) Section 24.139, relating to the 37th District Court, contains provisions applicable to all the district courts in Bexar County. To the extent that this subchapter is inconsistent with those provisions, section 24.139 prevails.

TEX. GOV'T CODE ANN. § 24.467 (Vernon 1989 & Supp.1999).

At all times relevant to this appeal,[3] Section 24.139(d) provided, in pertinent part:

The 144th, 175th, 186th, 187th, 226th, 227th, and 290th district courts shall give preference to criminal cases. The terms of those district courts begin on the first Mondays in January, March, May, July, September and November. Each term continues until the court has disposed of the business for that term.

Acts 1985, 69th Leg., ch. 480, § 1 (amended 1997) (current version at TEX. GOV'T CODE ANN. § 24.467 (Vernon Supp.1999)).

Cameron was arrested on January 17, 1995. He was timely indicted on the charge of organized crime on April 13, 1995.[4] Cameron does not contest this. But, he says the capital murder indictment in October was not timely. An untimely indictment would then require dismissal of the indictment pursuant to article 28.061 of the Texas Code of Criminal Procedure.[5] In support of this position, Cameron relies on Ex parte Torres, 966 S.W.2d 723, 728 (Tex.App.—San Antonio 1998, pet. requested) (en banc); Ex parte Lawson, 966 S.W.2d 532, 536 (Tex.App.—

San Antonio 1996, pet. requested)(en banc); State v. Ybarra, 942 S.W.2d 35, 38 (Tex. App.—Corpus Christi 1996), pet. dism'd, improvidently granted per curiam, Ex parte Ybarra, 977 S.W.2d 594 (Tex.Crim.App.1998); Norton v. State, 918 S.W.2d 25, 29 (Tex. App.—Houston [14th Dist.] 1996), pet. dism'd, improvidently granted per curiam, Ex parte Norton, 969 S.W.2d 3 (Tex.Crim. App.1998); and Ex parte Knight, 904 S.W.2d 722, 725 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd).

The State's position is that because the first indictment is timely, the later indictment arising out of the same criminal conduct or transaction is also timely. The State relies on Granviel v. State, 723 S.W.2d 141, 150 (Tex.Crim.App.1986), where the Court of Criminal Appeals rejected the defendant's challenge to his capital murder conviction on speedy trial grounds, whereby he claimed that "the [trial] court erred in denying his motion to dismiss the instant indictment because the court was obliged to find the State not ready on the other indictments arising out of that single transaction."

The issue before us today is which indictment controls for timeliness purposes. It appears to be a case of first impression in Texas.

Article 32.01, standing alone, has survived constitutional challenge in the courts of appeal. See Torres, 966 S.W.2d at 728; Frenzel, 963 S.W.2d at 915; Ex parte Barnes, 959 S.W.2d 313, 316 (Tex.App.—Fort Worth 1997), pet. dism'd, improvidently granted per curiam, Nos. 400–98, 401–98, 402–98 (Tex. Crim.App. Jan. 27, 1999) (not designated for publication); Ex parte Mallares, 953 S.W.2d 759, 763 (Tex.App.—Austin 1997, no pet.); State v. Condran, 951 S.W.2d 178, 189 (Tex.

---

3. Section 24.139 was amended by the Legislature in 1997 to provide for two grand jury terms in Bexar County, commencing the first Monday in January and July. See TEX. GOV'T CODE ANN. § 24.139 (Vernon Supp.1999). Since the arrest and indictments being challenged all occurred in 1995, we look to the former statute for the governing law.

4. The organized crime charge against Cameron was dropped subsequent to his capital murder conviction.

5. Cameron was arrested on capital murder charges; thus, he was on notice that he may be called upon to defend against capital murder charges. He does not have a credible "surprise" argument arising from the later indictment on capital murder charges. Because he was on notice of the possible capital murder charge, he could have moved at any time after the commencement of the May term of the grand jury under article 32.01 to challenge the lateness, or lack of, a capital murder indictment.

App.—Dallas 1997), *pet. dism'd, improvidently granted per curiam,* 977 S.W.2d 144 (Tex.Crim.App.1998); *Norton,* 918 S.W.2d at 29. Its counterpart in article 28.061, as amended in 1987 but before it was amended in 1997,[6] provided that the effect of an accused's successful challenge to an untimely indictment under article 32.01 was to prohibit "any further prosecution for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the State and prosecuting the offense that was discharged does not have the primary duty to prosecute." Act of June 1, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen. Laws 1885 (amended 1997) (current version at TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon Supp.1999)). This section has been found unconstitutional by some, but not all, courts of appeal who have considered the issue.[7] *See Frenzel,* 963 S.W.2d at 916; *Barnes,* 959 S.W.2d at 320; *Condran,* 951 S.W.2d at 191. *But see Torres,* 966 S.W.2d at 728; *Nguyen v. State,* 882 S.W.2d 471, 473 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Nix v. State,* 882 S.W.2d 474, 476 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). The 1997 amendments to article 28.061 render it inapplicable to discharges obtained pursuant to article 32.01. TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon Supp. 1999).

The cases relied on by Cameron are factually distinguishable because most of them are habeas corpus cases and all of them raise the issue of failure to seek and return an indictment in a timely manner. In none of the cases is there an otherwise valid and timely indictment. Here, there is.

*Granviel v. State* is also not dispositive of the issue. The defendant in *Granviel* had been convicted of capital murder and sentenced to death. 723 S.W.2d at 147. The state appellate court affirmed his conviction, but the Fifth Circuit granted his writ of habeas corpus. *Id.* On retrial, the defendant was again convicted of capital murder. *Id.* On appeal from the second conviction, the defendant claimed his speedy trial right had been violated as to other indictments arising out of the same transaction which had given rise to the capital murder charge, and they should be dismissed and prosecution barred. *Id.* at 150. The defendant argued, as a corollary, that the indictment for capital murder on which he was tried, convicted, and now appeals, should similarly be invalid under a "transactional bar" rule. *Id.* The Court of Criminal Appeals rejected this argument, holding that there is no transactional bar rule in the constitutional speedy trial guarantee. *Id.*

In *Holleman v. State,* the Amarillo court of appeals was presented with a situation factually similar to the case at bar. 945 S.W.2d 232 (Tex.App.—Amarillo 1997, pet. requested). Holleman engaged in a sexual encounter with his daughter on March 30, 1994. *Id.* at 233. He was indicted on counts of sexual assault, aggravated sexual assault and indecency with a child stemming from the incident. He was arrested on July 18, 1994.

---

6. Article 28.061 was amended by the Legislature to render it inapplicable to discharges under article 32.01, effective May 26, 1997. Act of May 12, 1997, 75th Leg., R.S., ch. 289, § 1, 1997 Tex. Gen. Laws 1304. The amended statute provides, in pertinent part, that the change in the law effected by the amendment "applies only to the prosecution of a defendant arrested for an offense on or after the effective date of this Act. The prosecution of a defendant arrested before the effective date of this Act is covered by the law in effect when the arrest occurred, and the former law is continued for that purpose." TEX. CODE CRIM. PROC. ANN. art. 28.061 historical note (Vernon Supp.1999) [Act of May 12, 1997, 75th Leg., R.S., ch. 289, § 4, 1997 Tex. Gen. Laws 1304]. Since Cameron was arrested and indicted on both charges in 1995, our inquiry is governed by the former statute.

7. In per curiam opinions, the Court of Criminal Appeals dismissed its petitions for discretionary review as improvidently granted in several cases raising this issue, saying that although it had granted the petition to determine the correctness of the appellate court's reversal of the trial court's dismissal with prejudice of the defendant's untimely indictment and remand for trial, such decision was improvident. *See Ex parte Ybarra,* 977 S.W.2d 594, 594 (Tex.Crim.App. 1998); *State v. Condran,* 977 S.W.2d 144, 144 (Tex.Crim.App.1998); *Ex parte Norton,* 969 S.W.2d 3, 3 (Tex.Crim.App.1998); *Ex parte Barnes,* Nos. 400-98, 401-98, 402-98 (Tex.Crim. App. Jan. 27, 1999) (not designated for publication).

*Id.* On March 21, 1996, the grand jury returned yet another indictment against Holleman, this time charging him with incest.[8] *Id.* Holleman moved to set aside this indictment under article 32.01, claiming that, despite the other indictments, the State knew of the incest offense at the time of his arrest but was dilatory in pursing the indictment on that charge. *Id.* at 234. The State responded by arguing Holleman had been held on a parole violation until November 1995, and that once he was no longer held under the parole violation and became subject to the State's criminal accusations against him, the complained-of indictment was timely returned against him. (The relevant court had two terms of court, beginning in January and July). *Id.* at 235. The court held that, "regardless of the authority under which he was detained, [Holleman] has not shown his entitlement to relief under articles 32.01 and 28.061," relying on the Court of Criminal Appeals' opinion in *Tatum v. State,* 505 S.W.2d 548, 550 (Tex.Crim.App.1974). *Id.*

*Holleman* relied on *Tatum* for its holding that an accused's remedy is to seek dismissal before an indictment is issued, otherwise article 32.01 has no application. *Id.* at 235–36. The court found that article 28.061 is not triggered "until 'a motion to set aside an indictment ... for failure to provide a speedy trial *is sustained.*'" *Id.* (emphasis in original). The *Holleman* court considered, but rejected, the defendant's arguments in reliance on *Knight,* 904 S.W.2d at 725 and *Norton,* 918 S.W.2d at 27–28. *Id.* As discussed above, *Knight* and *Norton,* both habeas corpus cases, stand for the proposition that the 1987 amendments to article 28.061, which make that article applicable to article 32.01, abrogate *Tatum* to the extent that *Tatum* did not contemplate the right to dismissal with prejudice effected by the amended 23.061. *Id.* *Holleman* declined to follow *Knight* and *Norton,* finding *Tatum* to be the controlling Court of Criminal Appeals precedent.[9] *Id.* at 236.

Because *Holleman* found that article 32.01 was not available to the defendant, the court did not reach the question we are faced with; that is, whether the fact of one timely indictment controls under article 32.01 as to subsequent, related indictments, or whether each indictment is subject to its own article 32.01 scrutiny.

■ The fundamental issue in this point of error concerns the construction of Texas Code of Criminal Procedure article 32.01. Statutory construction is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). When construing a statute, we endeavor to ascertain the legislature's intent and to give effect to that intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). In construing a statute, we consider the entire act, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991).

■ Where the language of a statute is unambiguous, we must seek the intent of the legislature as evidenced by the plain and common meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990). If application of the statute's plain language would lead to absurd consequences that the legislature could not have possibly intended, we will not apply the statutory language literally. *Sharp,* 815 S.W.2d at 249 (Tex.1991). We may also look to the Code Construction Act to provide us guidance in construing a statute. *See* Tex. Gov't Code Ann. § 311.001 (Vernon 1988); *see also Thiel v. Harris County Democratic Exec. Comm.,* 534 S.W.2d 891, 894 (Tex.1976). The Code Construction Act provides that, in the legislature's enaction of a statute, it is presumed:

(1) compliance with the constitutions of this state and the United States is intended;

---

8. It is unclear from the opinion what, if anything, happened regarding the other indictments. The opinion reveals that an attorney was appointed with regard to the previous indictments, and that some discovery had been undertaken.

9. Our court has followed the reasoning of *Norton* to find that a writ of habeas corpus seeking relief for late indictment in violation of article 32.01 is not moot if the indictment issues before the writ is granted or the grounds for relief determined. *Lawson,* 966 S.W.2d at 536.

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest.

TEX. GOV'T CODE ANN. § 311.021 (Vernon 1999). The Code Construction Act further provides that when construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters:

(1) the object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

*Id.* § 311.023. The heading of a title, subtitle, chapter, subchapter or section does not limit or expand the meaning of the statute. *Id.* § 311.024.

Article 32.01 has remained substantively unchanged from the time of its original adoption as article 537 of the Code of Criminal Procedure in 1856. *See* Elizabeth Klaas, *Dismissal for Pre-Indictment Delay under Articles 32.01 and 28.061 of the Texas Code of Criminal Procedure*, 23 AM. J.CRIM. L. 353, 365 (1996). The purpose of article 32.01 is to encourage the State to seek and obtain an indictment or release the defendant without undue delay. *Id.* at 372; *see also Condran,*

951 S.W.2d at 189–90 (finding that legislature, in enacting article 32.01, "created right in accused to be free from 'incidental punitive effect' of incarceration or being held to bail if State is unable to obtain indictment within specified period of time") (citation omitted). Article 32.01 plainly shows the legislature's intent was to prevent the accused from languishing in jail or living under criminal suspicion for an undue period of time without an indictment.

■ The language of article 32.01 is unambiguous. It is directed toward a defendant in custody, with *no* indictment. We conclude that a defendant cannot complain of the timeliness of a second or other indictment under article 32.01 once a valid and timely indictment is secured by the State. For timeliness purposes, we hold that article 32.01 is satisfied once the State secures a timely indictment arising out of the same criminal transaction or occurrence. The defendant suffers no due process violation if he continues under a valid indictment, although it is not the indictment he is ultimately prosecuted and convicted for, so long as the indictment arises out of the same criminal transaction or occurrence. The State is under an obligation to move expeditiously to charge and indict the criminally accused. They did so in this case. Article 32.01 should not be read to preclude the State from advancing alternative theories or charges arising out of the same criminal transaction once the State has acted within the timetable prescribed by article 32.01 for initially securing a timely indictment. If the State is dilatory in prosecuting the case, the defendant may invoke his speedy trial right.

As Cameron did not present a successful challenge to his indictment under 32.01, he is unable to invoke the dismissal with prejudice provision of the former article 28.061.[10]

---

10. Our holding today is not in conflict with our recent opinion in *Ex parte Cathcart*, 982 S.W.2d 540 (Tex.App.—San Antonio, 1998, n. pet. h.). In that case, Cathcart was charged by information with misdemeanor DWI, then the charges were dismissed with the notation that the State would later refile intoxication assault charges. *Id.* at 541–42. On appeal from denial of a writ of habeas corpus, we held that Cathcart was entitled to dismissal with prejudice under article

28.061 since her indictment was untimely under article 32.01. *Id.* at 542–43.

An important distinction must be made between *Cathcart* and the instant case. Article 32.01 speaks only to indictments. The first indictment rendered against Cathcart was clearly issued against her out of time under the statute, thus triggering article 32.01 for the first time nine months after her arrest. The fact that an *information* was returned against her within

## B. ORAL AND WRITTEN CUSTODIAL STATEMENTS

Cameron argues that the trial court erred by admitting the contents of his written statement which had defective warnings by allowing the statement to be read verbatim to the jury. Cameron says that the trial court's admission of the statement was error because the facts it contained were already known to the police before the statement, and it was error to allow the statement to be read verbatim, ostensibly as a recorded recollection, by the detective who took the statement. The State says that the facts were not known to the police prior to the statement, that each of the factual statements contained in the statement were independently corroborated, and that Cameron was not harmed by the reading of the statement because Cameron himself testified to the facts contained in the statement.

Cameron gave a written statement while in custody on January 17, 1995. Cameron argues, and the State concedes, that the written statement failed to comply with sections 2(a)(4) and 2(a)(5) of article 38.22 of the Texas Code of Criminal Procedure, which require the face of the statement to show that the accused was informed that if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning, and that the accused has the right to terminate the interview at any time. It is undisputed that Cameron's written statement omitted the words "and during any questioning" as required under section 2(a)(4), and completely omitted the warning of the right to terminate the interview at any time, as required by section 2(a)(5). At trial, the court suppressed admission of the written statement because it did not conform to the statutory requirements set out in section 2. It then allowed the statement to be read verbatim by the detective who took Cameron's statement on January 17, 1995.

■ We review a challenge to admissibility of evidence under an abuse of discretion standard. *Montgomery v. State*, 810

S.W.2d 372, 392 (Tex.Crim.App.1990) (on rehearing). The trial court abuses its discretion when it acts without reference to any guiding rules and principles, or acts in a manner that is arbitrary or capricious. *Id.* The fact that the appellate court may have reached a different conclusion than the trial judge did within its discretionary authority does not demonstrate that an abuse of discretion has occurred. *Id.* at 390.

### 1. Article 38.22, section 3(c)

Section 3(a) of article 38.22 of the Texas Code of Criminal Procedure forbids the admission in a criminal proceeding of an accused's unrecorded oral statement made as a result of custodial interrogation. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon 1989). Section 3(c) "does not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(c) (Vernon 1989).

■ When a defendant's in-custody oral statement contains facts or circumstances which are found to be true and conduce to establish his guilt, section 3(c) of article 38.22 permits introduction of the statement at trial. *McGilvery v. State*, 533 S.W.2d 24, 26 (Tex. Crim.App.1976); *Dorsey v. State*, 940 S.W.2d 169, 176 (Tex.App.—Dallas 1996, pet ref'd.).

■ Facts "found to be true" means those "facts about which the police were unaware at the time of the confession are later, after the confession, found to be true." *Gunter v. State*, 858 S.W.2d 430, 448 (Tex.Crim. App.1993) (quoting *Romero v. State*, 800 S.W.2d 539, 544–45 (Tex.Crim.App.1990)); *Almanza v. State*, 839 S.W.2d 817, 820 (Tex. Crim.App.1992). Subsequent corroboration of facts in an oral statement that were previously unknown will make an oral statement admissible. *Gunter*, 858 S.W.2d at 448; *Port v. State*, 791 S.W.2d 103, 107 (Tex.Crim.App. 1990). It is only when the oral statement of

---

nine months is of no consequence because article 32.01 does not speak to an information. Cathcart was able to invoke the dismissal with

prejudice protection afforded by article 28.061 because she had successfully challenged her *indictment* as untimely.

the accused is joined with the subsequent discovery of previously unknown evidence that the reliability necessary to invoke the limited exception to article 38.22 is established. *Almanza*, 839 S.W.2d at 821.

 If any one of the assertions of facts or circumstances of the confession is found to be true and conduces to establish the accused's guilt, then the oral confession is admissible in its entirety pursuant to section 3(c) of article 38.22. *Baldree v. State*, 784 S.W.2d 676, 684 (Tex.Crim.App.1989); *Marini v. State*, 593 S.W.2d 709, 713 (Tex.Crim. App. [Panel Op.] 1980); *Hayes v. State*, 502 S.W.2d 158, 159 (Tex.Crim.App.1973). It is not necessary that all of the accused's oral statements be found to be true and conduce to establish his guilt; if but one of the assertions within a confession is found to be true and conduces to show the guilt of the accused, then the confession is admissible in its entirety. *Gunter*, 858 S.W.2d at 449; *Port*, 791 S.W.2d at 107; *Baldree*, 784 S.W.2d at 684; *Marini*, 593 S.W.2d at 713. Section 3(c) merely requires that some statement contained in the confession be found to be true and conduce to establish guilt; it does not require that the confession in each of its parts meets that test. *Marini*, 593 S.W.2d at 713.

 The provision in article 38.22, section 3(c) regarding the "finding of secreted or stolen property or the instrument with which he states the offense was committed" is not a limitation on the statements that may be found to be true and conduce to establish guilt. *Gunter*, 858 S.W.2d at 448; *Briddle v. State*, 742 S.W.2d 379, 388 (Tex.Crim.App. 1987). Oral statements made by an accused need not lead to or result in the discovery of incriminating evidence so long as the requirements of the section 3(c) are met. *Gunter*, 858 S.W.2d at 448; *Port*, 791 S.W.2d at 106.

 Cameron's statement, recorded in written form but orally relayed to the detective, contained the following facts which were found to be true and corroborated by independent evidence adduced at trial:

1) The parties were in Nichols' Bronco when they initially went to burglarize the Braden habitation;
2) The parties were all wearing gloves and masks;
3) The parties returned to the Braden house in Dowdle's grandmother's car, a silver, two-door Dodge;
4) Upon the return trip, Dowdle was driving, Moore was in the front passenger seat, and Cameron was in the back seat, and all the parties were wearing masks and gloves;
5) Cameron took a compound bow from the Braden house;
6) Officer Dominguez approached the car and Moore shot Dominguez with a gun Moore was carrying;
7) The parties returned to Dowdle's house after the shooting and put all of the stolen items except a TV and VCR in the trunk of Cameron's car;
8) The parties drove to Pipe Creek, an area near Bandera, where they "dumped" the stolen property.

The trial court, in the hearing on the motion, found that the police did not know of one of the stolen items: a compound bow. Upon receiving Cameron's statement, the police questioned Braden about his compound bow, who confirmed it was missing. The trial court found that this one assertion alone, coupled with the finding that it had been stolen, constituted a fact found to be true which conduced to show the guilt of the accused, rendering the confession admissible in its entirety. This particular finding, coupled with the numerous other findings which were also found to be true and conduced to establish guilt, establish the reliability of the confession.

 An erroneous admission of the oral statement is rendered harmless when the defendant subsequently testifies to the same facts. *Amunson v. State*, 928 S.W.2d 601, 608 (Tex.App.—San Antonio 1996, pet. ref'd). When the defendant offers the same evidence to which he earlier objected, he waives his complaint on appeal. *Jones v. State*, 843 S.W.2d 487, 493 (Tex.Crim.App. 1992); *Amunson*, 928 S.W.2d at 608. How-

ever, if a defendant takes the witness stand to refute, deny, contradict, or impeach evidence or testimony properly objected to, no waiver of the objection occurs. *Maynard v. State,* 685 S.W.2d 60, 65–66 (Tex.Crim.App. 1985) (citing *Thomas v. State,* 572 S.W.2d 507, 512 (Tex.Crim.App.1976)). Such testimony does not act as a waiver of the right to challenge the admissibility of the evidence originally admitted. *Maynard,* 685 S.W.2d at 65–66. However, "if a defendant in testifying admits or confirms the truth of the facts or evidence objected to, even if attempting to create a defense based on or beyond those facts, a waiver of the objection does occur." *Id.* (quoting *Thomas,* 572 S.W.2d at 512).

 Cameron took the stand on his own behalf and testified on direct examination in substantial measure to the contents of his statement. He does not argue on appeal that he took the stand to refute, deny, contradict or impeach evidence.

The trial court did not abuse its discretion in admitting the statement. Even if the trial court had erred, Cameron's own testimony vitiated the harmful effect of the reading of the statement.

### 2. *Rule 803(5)*

 Cameron complains that the trial court erred in allowing his statement to be read verbatim to the jury, ostensibly as a past recollection recorded. The State responds by asserting that once the statement is deemed admissible as an oral statement, the mechanism for introducing the statement is not subject to challenge. The State concedes that a proper foundation for admissibility under Rule of Evidence 803(5), which permits a witness to refresh his or her memory using a writing, was not laid. However, at the time the trial court ruled on the admissibility of the contents of the written statement, the following exchange was had:

Mr. Luitjen (State's attorney): Mr. Holguin, would you read to the jury in its entirety State's Exhibit 130 (Cameron's statement)?

Mr. Garcia (Cameron's attorney): Your honor, at this time I must object because the Court has granted a motion to quash the statement.

The Court: That's correct. The written statement is not admissible because it is clear to one and all that the warnings are inadequately displayed. That does not mean, however, as we discussed ad nauseam, that the contents of the conversation that he had with Mr. Cameron is—that is admissible . because it is corroborated by things that the police did not know at the time, the finding of the compound bow and many other things which I detailed earlier in my rulings on the admissibility of the conversation, the oral statement.

Mr. Garcia: In that case, your honor, we object to his reading from a document that has not been admitted into evidence. We don't mind if he refreshes his memory. We do object to him reading from a document not admitted into evidence.

The Court: Well, that's overruled.

Rule 803(5) is a hearsay exception rule which renders otherwise inadmissible hearsay testimony admissible under certain situations where circumstances indicate reliability and trustworthiness. *Phea v. State,* 767 S.W.2d 263, 267 (Tex.App.—Amarillo 1989, pet. ref'd). It is an independent method of admitting otherwise inadmissible statements, not merely a mechanism for admitting a statement previously or otherwise deemed admissible. *See id.* at 268. Similarly, section 3(c) of article 38.22 provides an independent method of admitting otherwise inadmissible statements, although it does not instruct how the statements shall or may be introduced.

The State did not need to lay the predicate and proceed under Rule 803(5) to admit the statement since the trial court had already ruled that the statement was admissible under section 3(c) of article 38.22. Section 3(c) provides an independent mechanism for admitting the statement, and since it is silent on the means by which the statement can be introduced, the trial court acted within its discretion in allowing the statement to be read verbatim.

## C. EXTRANEOUS OFFENSE

Cameron argues that the trial court erred by admitting evidence of an extraneous offense which he says is irrelevant under Rules of Evidence 402, 403, and 404(b). Specifically, he argues that the trial court erred in admitting a videotape in which he and Moore participate in a car bombing because it is irrelevant, prejudicial, or an impermissible use of previous criminal conduct. The State responds by asserting that Cameron opened the door by testifying to the events portrayed on the tape, and that Cameron waived objection on appeal by calling Dowdle (the driver of the car) to testify on direct examination regarding the past character of Moore, the co-defendant. The State contends that such testimony left a false impression of Moore and Cameron, thus giving rise to cross-examination regarding the events portrayed on the tape. The State further contends that Cameron waived error by failing to object to the State's cross-examination of Dowdle regarding the car bombing incident. Finally, the State responds .that the bombing evidence and videotape were probative of Cameron's future dangerousness and thus not unfairly prejudicial.

On November 30, 1995, Cameron filed a motion to suppress evidence of extraneous offenses, and seeking to exclude the videotaped evidence of the car bombing and related testimony. He also filed a motion in limine. During the guilt/innocence stage of the proceedings, the trial court ruled that testimony about the car bombing and the videotape were inadmissible. Cameron's attorney then called Dowdle, who testified that he did not believe Moore was a dangerous person. The trial court permitted the State, outside the jury, to make an offer of proof of the testimony Dowdle would provide, and ruled that the testimony alone would be permitted to counterbalance the false impression left by Dowdle's testimony on direct examination. The trial court maintained the exclusion of the videotape at that time. Cameron's attorney did not object to Dowdle's testimony on cross-examination.

At the close of State's rebuttal, the State moved to introduce portions of the videotape depicting the car bombing, asserting that Cameron had admitted his complicity in the offense, and it should be admitted and published to the jury. The trial court agreed, and allowed the car bombing segment to be shown before the close of the State's case. During the punishment phase of the trial, Matthew Joiner testified that he had been living with Moore, Nichols, and Meredith Lassiter when Moore and Cameron showed him a videotape of the bombing. The trial court ruled that if Joiner had viewed the tape, he could testify to it and it could be played to the jury. The jury again viewed the videotape at that time.

█ Our inquiry when faced with a challenge to the relevance of admitted evidence is two-fold: whether the trial court abused its discretion, and, if so, whether the admission of the evidence constituted harmful error. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

We review a trial court's rulings regarding admissibility of evidence under Rules 402, 403, and 404(b) for an abuse of discretion. *Id.* at 392. The trial court abuses its discretion when it acts without reference to any guiding rules and principles, or acts in a manner that is arbitrary or capricious. *Id.* The fact that the appellate court may have reached a different conclusion than the trial court did within its discretionary authority does not demonstrate that an abuse of discretion has occurred. *Id.* at 391.

█ We disregard a nonconstitutional error that does not affect the substantial rights of a defendant. Tex.R.App. Proc. 44.2(b). A substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim. App.1997); *Garza v. State,* 963 S.W.2d 926, 930 (Tex.App.—San Antonio 1998, no pet.). Application of Rule 44.2(b) requires us to determine if a substantial right of the defendant has been adversely affected. *Garza,* 963 S.W.2d at 930. We undertake this inquiry by considering: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the probable collateral consequences of the error; (5) how much weight a

juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

When the defendant offers the same evidence to which he earlier objected, he is not in a position to complain on appeal. *Jones*, 843 S.W.2d at 493; *Amunson*, 928 S.W.2d at 608. The exception to this rule is that no waiver of the objection occurs when a defendant takes the witness stand to refute, deny, contradict, or impeach evidence or testimony to which he has properly objected. *Maynard v. State*, 685 S.W.2d 60, 65–66 (Tex.Crim.App.1985) (citing *Thomas*, 572 S.W.2d at 512). Inadmissible evidence becomes admissible if the defendant "opens the door" to its admission by testifying to its effect. *Green v. State*, 934 S.W.2d 92, 102 (Tex.Crim.App.1996). The trial court had previously ruled the evidence of the car bombing and the videotape were inadmissible

as irrelevant. When Cameron's counsel called Dowdle, who presented a false impression of Moore, the trial court ruled that testimony about the car bombing was admissible. Cameron did not object during the testimony about Cameron's role in the car bombing. Cameron then testified to the events surrounding the car bombing. After Cameron's testimony the State sought, and was permitted, to introduce the videotape. The trial court obviously felt the door had been opened by the Defendant. We agree.

## D. REQUISITE MENTAL STATE

Cameron argues that the trial court erred in two ways regarding the requisite mental state for capital murder: first, by failing to quash the indictment which accused Cameron of intentionally or knowingly causing the death of an individual; and second, charging the jury that Cameron could be found guilty of capital murder if he intentionally or knowingly caused the death of an individual.[11]

11. In support of his position, Cameron relies on *Richardson v. State*, 744 S.W.2d 65 (Tex.Crim. App.1987). *Richardson* is directly on point, and squarely decides the issue against Cameron's position. *Richardson* enjoyed a tumultuous subsequent history, going up to and back from the United States Supreme Court on a separate issue (*Penry* evidence on mitigation at the punishment phase) twice before certiorari was denied. The Supreme Court vacated the Court of Criminal Appeals opinion and remanded the case to the Court of Criminal Appeals. *Richardson v. Texas*, 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989). The Court of Criminal Appeals again affirmed the lower court opinion, *Richardson v. State*, 886 S.W.2d 769 (Tex.Crim.App.1991), and the Supreme Court again vacated and remanded. *Richardson v. Texas*, 509 U.S. 917, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993). The Court of Criminal Appeals again affirmed, *Richardson v. State*, 901 S.W.2d 941 (Tex.Crim.App.1994), upon which the Supreme Court denied certiorari. *Richardson v. Texas*, 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 859 (1995). Thus, while the Court of Criminal Appeals never disavowed its holding on this issue, and the Supreme Court never addressed the issue, the Supreme Court did vacate the opinion containing the pertinent statement of law, and thus, its precedential value is questionable, although it has been cited with approval by several Texas courts.

In *Richardson*, the defendant, charged with capital murder, argued on appeal that the trial court erred in overruling his motion to quash the indictment and in overruling his objections to the court's charge at the guilt-innocence phase of the trial since both the indictment and charge in-

cluded the culpable mental state "knowingly." *Richardson*, 744 S.W.2d at 83. *Richardson* contended that the insertion of the culpable mental state "knowingly" in the indictment authorized a conviction for felony murder under Penal Code section 19.02(a)(3), instead of capital murder under Penal Code section 19.03(a)(2), arguing that the charge of the court was ambiguous in that it authorized the jury to convict upon a finding of a culpable mental state less than that permitted by statute. *Id.*

The Court rejected this argument, holding that: capital murder is committed when a person commits murder, under Penal Code section 19.02(a)(1), with at least one of the aggravating factors contained in the capital murder statute, Penal Code section 19.03. Combining the elements of the two statutes we find that capital murder under section 19.03(a)(2) is committed when a person intentionally or knowingly causes the death of an individual (murder under section 19.02(a)(1)) and intentionally commits the murder in the course of committing or attempting to commit robbery. That is precisely what the indictment and the court's charge to the jury authorized in the instant cause.

*Id.* at 84. The Court noted that it had previously "implicitly approved" of similar indictments and charges, citing *Wilder v. State*, 583 S.W.2d 349 (Tex.Crim.App.1979), *judgment vacated and case remanded on other grounds*, 453 U.S. 902, 101 S.Ct. 3133 (1981), *opinion on remand*, 623 S.W.2d 650 (1981); *Hammett v. State*, 578 S.W.2d 699 (Tex.Crim.App.1979); *Granviel v. State*, 552 S.W.2d 107 (Tex.Crim.App.1976);

■■■ We review a challenge to a trial court's ruling on a motion to quash an indictment under an abuse of discretion standard. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex. Crim.App.1980) (opinion on rehearing). We review an attack on a jury charge by first determining whether the charge error was objected to in a timely manner. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If the error in the charge was the subject of a timely objection in the trial court, then we must reverse if the error "is calculated to injure the rights of defendant, which means no more than that there must be some harm to the accused from the error." *Id.* However, if no proper objection was made at trial, the defendant must claim fundamental error. *Id.*

Section 19.02(b)(1) of the Penal Code provides that a person commits an offense if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994). Penal Code section 19.03 states:

Capital Murder

(a) A person commits an offense if he commits murder as defined under section 19.02(b)(1) and:

(1) the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman;

(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction of justice.

TEX. PENAL CODE ANN. § 19.03(a)(1–2) (Vernon 1994).

White v. State, 543 S.W.2d 104 (Tex.Crim.App. 1976). *Id.*

Richardson concluded that the indictment in question literally followed the statute, was written in ordinary and concise language, and neither misled the defendant nor failed to give him fair notice of the offense charged. *Id.* Moreover, the Court found that the indictment clearly alleges that Richardson was being charged with capital murder under section 19.03(a)(2), and not felony murder under section 19.02(a)(3). *Id.*

Article 21.02 of the Texas Code of Criminal Procedure requires that an indictment set forth the offense in "plain and intelligible words." TEX.CODE CRIM. PROC. ANN. § 21.02 (Vernon 1989). Article 21.11 provides, in pertinent part, that:

[a]n indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.

TEX.CODE CRIM. PROC. ANN. § 21.11 (Vernon 1989).

Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994); *see Webb v. State*, 760 S.W.2d 263, 267 n. 7 (Tex.Crim. App.1988).

■■■ It is permissible to alternatively plead differing methods of committing one offense in one indictment. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Marquez v. State*, 725 S.W.2d 217, 239 (Tex. Crim.App.1987). Although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *Kitchens*, 823 S.W.2d at 258; *Vasquez v. State*, 665 S.W.2d 484, 486–487 (Tex.Crim. App.1984), *overruled on other grounds sub nom, Gonzales v. State*, 723 S.W.2d 746, 748 (Tex.Crim.App.1987). Where alternate theories of committing the same offense are sub-

Finally, the Court found that the charge of the court, which properly required that the jury find that the appellant intentionally caused the death while in the course of committing or attempting to commit robbery, properly tracked the indictment and the statute and was neither ambiguous nor did it permit the jury to convict the appellant upon a finding of a culpable mental state less than that required by statute. *Id.* Thus, the Court found Richardson's argument to lack merit. *Id.*

mitted to the jury in the disjunctive, the jury's return of a general verdict is valid if the evidence is sufficient to support a finding under any of the theories submitted. *Kitchens,* 823 S.W.2d at 258; *Aguirre v. State,* 732 S.W.2d 320, 326 (Tex.Crim.App.1982) (on rehearing). This accords with the Supreme Court's pronouncement that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Kitchens,* 823 S.W.2d at 258 (quoting *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion) and *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990)).

Cameron was charged with capital murder under two alternative theories. He was a party to the murder of a peace officer, or he was a party to murder in conjunction with the burglary of a habitation. To successfully prosecute a capital murder charge under section 19.03(a)(2) of the Penal Code, the State must prove that the accused intentionally or knowingly murdered a peace officer or fireman who was acting in the lawful discharge of an official duty and who the person knew to be a peace officer or fireman. TEX. PENAL CODE ANN. § 19.03(a)(1) (Vernon 1994). To successfully prosecute a capital murder charge under section 19.03(a)(2) of the Penal Code, the State must prove that the accused intentionally or knowingly caused the death of an individual and that the accused engaged in other specifically delineated criminal conduct. *Patrick v. State,* 906 S.W.2d 481, 491 (Tex.Crim.App.1995); *Hughes v. State,* 897 S.W.2d 285, 295 (Tex.Crim.App.1994).

■ Capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder. *Patrick,* 906 S.W.2d at 491; *Hughes,* 897 S.W.2d at 295. In a capital murder case involving more than one conduct element, it is not error for the definitions to include more than the result of conduct element. *Patrick,* 906 S.W.2d at 491; *Hughes,* 897 S.W.2d at 295–96. Burglary of a habitation is an offense which includes all three

conduct elements. *Patrick,* 906 S.W.2d at 491.

Cameron's indictment read, in pertinent part:

### COUNT I

#### Paragraph A

15th day of JANUARY, A.D., 1995, PAUL CAMERON, did then and there intentionally and knowingly cause the death of an individual, namely: FABIAN DOMINGUEZ, by SHOOTING FABIAN DOMINGUEZ WITH A DEADLY WEAPON, NAMELY: A HANDGUN, and the said FABIAN DOMINGUEZ was then a PEACE OFFICER acting in the lawful discharge of an official duty and PAUL CAMERON knew the said FABIAN DOMINGUEZ was a PEACE OFFICER.

#### Paragraph B

And the grand jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 15th day of JANUARY, A.D., 1995, and anterior to the presentment of this indictment, in the County of Bexar and the State of Texas, PAUL CAMERON, did then and there intentionally and knowingly CAUSE THE DEATH OF AN INDIVIDUAL, NAMELY: FABIAN DOMINGUEZ, by SHOOTING FABIAN DOMINGUEZ WITH A DEADLY WEAPON, NAMELY: A HANDGUN, AND PAUL CAMERON DID THEN AND THERE INTENTIONALLY CAUSE THE DEATH OF THE SAID FABIAN DOMINGUEZ WHILE IN THE COURSE OF COMMITTING AND ATTEMPTING TO COMMIT THE OFFENSE OF BURGLARY OF A HABITATION OWNED BY WILLIAM BRADEN.

The court's charge said:

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Now if you find from the evidence beyond a reasonable doubt that on or about the 15th day of January, 1995 in Bexar County, Texas, the defendant Paul Cameron, acting together with Johnathan Moore as a party as that term is defined herein, did intentionally or knowingly cause the death of an individual, namely: Fabian Dominguez, by shooting Fabian Dominguez with a deadly weapon, namely: a handgun, and Fabian Dominguez was then a peace officer acting in the lawful discharge of an official duty and Paul Cameron knew Fabian Dominguez was a peace officer; or

If you find from the evidence beyond a reasonable doubt that on or about the 15th day of January A.D., 1995 in Bexar County, Texas, the defendant Paul Cameron, acting together with Johnathan Moore as a party as that term is defined herein, did intentionally cause the death of an individual, namely: Fabian Dominguez, by shooting Fabian Dominguez with a deadly weapon, namely: a handgun, and the defendant, Paul Cameron, acting together with Johnathan Moore as a party as that term is defined herein, did intentionally cause the death of Fabian Dominguez, while in the course of committing or attempting to commit the offense of burglary of a habitation owned by William Braden, then you will find the defendant, Paul Cameron, guilty of capital murder.

At the charge conference, Cameron offered several objections and proposed instructions, but did not object to the inclusion of the "knowingly" language. He did not preserve this issue for appeal, and he does not allege fundamental error on appeal.

▮▮ Although the indictment contained the language "intentionally and knowingly" in the second count, the portion of the jury charge that applies the law to the facts correctly authorized the jury to convict if they found the defendant intentionally or knowingly caused the death of Dominguez, a peace officer, or intentionally caused the death while in the course of committing or attempting to commit burglary of a habitation. Texas courts have consistently held that capital murder indictments and jury charges using the "intentionally and knowingly" language

are sufficient, even if the definitions of intentionally and knowingly are not properly limited as to result of conduct, nature of conduct, or nature of circumstances instructions. *See, e.g., McDuff v. State,* 939 S.W.2d 607, 624 (Tex.Crim.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997); *Alvarado v. State,* 912 S.W.2d 199, 216–17 (Tex.Crim.App.1995); *Dinkins v. State,* 894 S.W.2d 330, 339 (Tex.Crim.App.1995); *Hernandez v. State,* 819 S.W.2d 806, 811–12 (Tex. Crim.App.1991); *see also Skinner v. State,* 956 S.W.2d 532, 544 (Tex.Crim.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998); *Duke v. State,* 950 S.W.2d 424, 428 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); *Hidalgo v. State,* 945 S.W.2d 313, 316 (Tex.App.—San Antonio 1997), *aff'd,* 983 S.W.2d 746 (Tex.Crim.App. January 13, 1999); *Parra v. State,* 935 S.W.2d 862, 872 (Tex.App.—Texarkana 1996, pet. requested).

In *Patrick* and *Hughes,* the complained-of jury instructions contained surplusage that the Court found to be error. Employing an *Almanza* analysis, however, the Court in both cases held the error to be harmless. The jury charge and instructions in the instant case do not contain the surplusage found in *Patrick* and *Hughes,* and conform to the proper instructions regarding the requisite mental state to find a defendant guilty of capital murder dictated by *Patrick* and *Hughes.* The trial court did not err in failing to quash the indictment or in its jury charge.

### E. STATEMENTS TO JAIL PSYCHIATRIST

Cameron complains that the trial court erred by admitting statements Cameron made to a jail psychiatrist, Dr. Garcia. Cameron says that the trial court erred in allowing testimony that Cameron had admitted to prior drug use and that Cameron's response to Garcia, when asked about his current predicament, was "Shit happens." The State responds by asserting that the statements were made during a routine medical screening of newly-booked prisoners, and that Cameron had admitted to prior drug use on direct examination prior to Garcia's testimony. The State contends that "Shit happens"

**852**

is proper rebuttal testimony on the issue of Cameron's and Cameron's mother's claimed remorse.

Garcia testified that in his capacity as a jail psychiatrist he provides psychiatric services to the inmate population, and as a matter of course, he meets with, evaluates, and offers services to inmates. After Cameron was booked, he underwent a medical screening. Garcia met with Cameron the day following his arrest because the medical screening revealed a history of depression and suicidal tendencies. Garcia testified Cameron admitted prior drug use and suicidal tendencies. When asked about how he felt about the fact that he was in jail charged with capital murder of a police officer, Garcia testified that Cameron responded with a smile: "Shit happens."

Subsequent to Garcia's testimony about the drug use, but prior to the remainder of his testimony, Cameron objected to the testimony on relevance grounds. Outside the presence of the jury, the trial court ruled that the statement about "shit happens" was admissible as probative on the issue of Cameron's remorse, but that the State should steer clear of drug use. No more testimony on drug use was introduced.

 Under Rule 803(4), a statement need not have been made to a physician, so long as it is made for the purpose of medical treatment. *Syndex Corp. v. Dean,* 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied). Statements made to psychologists, social workers, and psychiatrists are admissible under Rule 803(4) if they are given for the purpose of medical diagnosis and treatment. *See, e.g., Zinger v. State,* 899 S.W.2d 423, 431 (Tex.App.—Austin 1995), *rev'd on other grounds,* 932 S.W.2d 511 (Tex.Crim. App.1996); *Syndex,* 820 S.W.2d at 873; *Macias v. State,* 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, pet. ref'd). Garcia met with Cameron for the purpose of evaluating him and offering psychiatric services on the day following his arrest and incarceration, with the knowledge that Cameron suffered from depression and may have been suicidal. This is sufficient to bring the statements within the scope of Rule 803(5). The trial court did not abuse its discretion in admitting the statements.

The evidence of drug use was irrelevant, and should have been excluded. Only one statement about prior drug use was introduced, though, and the trial court sustained the objection to the evidence once the issue was raised. Any error this might have cause is rendered harmless because Cameron had previously testified on direct examination about his drug use.

The trial court acted within its discretion by admitting the testimony about remorse as probative of the issue on rebuttal once Cameron introduced the remorse issue through his own testimony.

### III.

We overrule the total of Cameron's points of error and affirm the conviction for capital murder.