## Ex parte Rachel Rene LAWSON.

### No. 04–96–00265–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 26, 1996.

Rehearing Overruled March 18, 1998.

Michael C. Gross, San Antonio, for Appellant.

Robert Boyd Padgett, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

---

## OPINION

HARDBERGER, Justice.

This is a case in which Lawson was tardily indicted in clear violation of a Texas statute. The defendant must be released unless good cause is shown for the late indictment. Further, in cases such as this, another statute demands that the discharge bars all further prosecution. A person who could be guilty may go unpunished. This is an unfortunate result, but less damaging in the long run than to construe laws to have no meaning. *Si a jure discedas, vagus eris, et erunt omnia omnibus incerta.* (If you depart from the law, you will go astray, and everything will become uncertain.) SIR EDWARD COKE, THE LAWS OF ENGLAND OR A COMMENTARY ON LITTLETON 227.

### Procedural Facts

Rachel Rene Lawson was arrested on December 29, 1995, for possession of less than one gram of cocaine. She was released on bond two days later, December 31, 1995. This date also marked the end of the November term of the grand jury which runs for two months in Bexar County. The January term of the grand jury ran from January 1 to March 3, 1996. The State had until March 3 to get Lawson indicted, but they did not do so in that time period. The next term, the March term, ran from March 4, 1996 through May 5, 1996. On the first day of that term, March 4, Lawson filed an application for writ of habeas corpus and moved for dismissal of prosecution with prejudice. Three days later the grand jury indicted her. The trial court heard evidence on the motion for dismissal on March 11 and denied relief. We reverse and remand to the trial court for further proceedings consistent with this opinion.

### Discussion of the Law

Habeas corpus, which Sir William Blackstone called the most celebrated writ in the English law, and others have named "the great writ of liberty," is ancient. There are references to its use prior to the signing of the Magna Carta and it was formally adopted in the Habeas Corpus Act of 1679.[2] In our own country it was thought important enough to include in the Constitution. The writ tests only whether an accused has been accorded due process, not whether he or she is guilty. It orders a person to be brought forward to a specific place, at a specific time, and for a specific purpose. Through the centuries it has been used to force the State to move forward, and not to keep someone under arrest without a timely indictment and trial. To use the vernacular, the State must "get on with it."

### The "Next" Term

Indictments, following arrest, must be timely, or they are to be dismissed. Reasonable people might disagree about what "timely" means, so the legislature has decided what that is. In this case, it says:

> When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail.

TEX.CODE CRIM. PROC. art. 32.01 (Vernon 1989).

As statutes go this is not overly difficult to understand. The prosecution of the defendant shall be dismissed unless the indictment or information is presented against the defendant at the next term of court. The terms of court are also defined by statute:

> (a) The 187th Judicial District is composed of Bexar County.

> (b) The 187th District Court shall give preference to criminal cases.

---

2. *See* Neil Douglas McFeeley, *The Historical Development of Habeas Corpus*, 30 SOUTHWESTERN L.J. 585 (1976). The origin of the writ may actually lie in Roman or Norman civil law, for "the leading idea of it—deliverance by summary legal process from illegal confinement—may be traced in the laws of other countries which derived none of their principles of jurisprudence or rules of procedure from English law." *Id., quoting* R. HURD, A TREATISE ON THE RIGHT OF PERSONAL LIBERTY AND ON THE WRIT OF HABEAS CORPUS AND THE PRACTICE CONNECTED WITH IT 131 (1876).

(c) The terms of the 187th District Court begin on the first Mondays in January, March, May, July, September, and November. Each term continues until the court has disposed of the business for that term.

Tex. Gov't Code § 24.366 (Vernon 1989).

■ Applying the law to these facts, Lawson was arrested and released on bond in the November term of 1995. The next term, the January term, ran through February. Unless there was good cause shown, she had to be indicted in that term. She was not. Nor was good cause shown.

The State, in an effort to establish good cause for the late indictment, filed an affidavit which pointed out that the grand jury for the November term had already been discharged when Lawson was arrested.[3] That is a good reason she was not indicted in the November term. *See Norton v. State,* 918 S.W.2d 25, 30 (Tex.App.—Houston [14th Dist.] 1996, pet. filed) (J. Hudson, concurring op.) (statute permits extension where "unusual circumstances" frustrate State's attempts to timely indict). But it offers no explanation of why she was not indicted in the following January term, the term where indictment is required by the statute. If good cause is going to be shown it must be directed as to why indictment did not happen in that term. The State, in the record before us, is entirely silent on any good cause reasons why the indictment did not happen in the January term.

The State argues in its brief that the term in which Lawson was arrested should not count because the grand jury had already been dismissed, but they offer no law to support such a concept. The statute that defines the terms refers only to calendar days and months. It is not tied to when the grand jury is in or out of session. The law specifically says, "Each term continues until the court has disposed of the business for that term." Tex. Gov't Code § 24.366(c). The term is when the statute says it is:

(b) Except as otherwise provided by this chapter, the terms of each district, family district, and criminal district court are continuous. Each term begins on a day fixed by law and continues until the day fixed by law for the beginning of the next succeeding term.

(c) The commencement of a term of court is not affected by the fact that the first day of the term falls on a legal holiday or the judge is absent from the court on the first day of the term.

Tex. Gov't Code § 24.012 (Vernon 1988).

The calendar defines terms of court, not the State or the court's activities. Article 32.01, in requiring that the indictment be brought in the next term of court, accommodates those occurring at the end of a term or when the grand jury is not sitting in that term. Even in the worst of circumstances the Bexar County district attorney will always have at least two months in which to bring the indictment.

It can be argued that even two months is too short a time in which to bring the indictment. But that is the Legislature's business: not the court's. The State also points out that other districts in the state have been allotted different time limits for their terms,[4]

---

3. The State called Melissa Priest, assistant district attorney in charge of grand juries, to testify as to when the grand juries were actually impaneled and discharged during the relevant time periods. Priest testified that the November-term grand jury was discharged on December 21 because it is traditionally difficult to get a quorum during the holiday season. She noted that the order of discharge referred any pending cases to the grand jury next in session. Between December 21, 1995 and January 3, 1996, no grand jury was impaneled. Thus, Priest stated, the first grand jury that could consider charges filed against Lawson was the January 1996 grand jury and the "next" grand jury would meet during the March 1996 term.

4. For example, the 4th Judicial District, located in Rusk County, like all Bexar County judicial districts, has two-month terms. *See* Tex. Gov't Code § 24.104 (Vernon 1988). The 1st Judicial District, which covers Jasper, Newton, San Augustine, and Sabine Counties, has six-month terms with each county's term staggered so as overlap one another. *Id.* § 24.101. The 5th Judicial District, composed of Bowie and Cass Counties, has three-month terms which stagger and overlap in each county. *Id.* § 24.105. Presumably, the variety of terms of court are meant to address the different docket loads in rural and urban settings. Yet among the highly populated districts, there are six-month terms, four-month terms, three-month terms, and two-month terms. It is difficult for us to conclude that a three-

and therefore the laws are inconsistent. This may well be true, but we are not dealing in this case with other districts of the state. We are dealing with the 187th Judicial District and we are dealing with a clear, specific statute. We are reminded yet again that:

> Judges on the campaign trail always promise they will uphold the law as written, and not what they wish was written. The separation of powers doctrine requires such obedience. Having so promised, and being so bound by law, we follow the statute.

*Sims v. Adoption Alliance,* 922 S.W.2d 213, 214 (Tex.App.—San Antonio 1996, writ ref'd).

### Dismissal with Prejudice

■ Having found the indictment was issued in violation of Article 32.01, we now turn to the effects of the dismissal:

> If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article or Article 32.01 of this code is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute.

TEX.CODE CRIM. PROC. art. 28.061 (Vernon 1989). In short, the dismissal is with prejudice.

■ Lawson, through her attorney, filed the application for writ of habeas corpus on the first day of the March 1996 term. This is as timely as you can get. It was the first day the writ could have been filed. Any earlier day would have been premature because it would have been during the term in which the State could have issued the indictment. After the defendant filed the writ petition on the first day of the new term, the State then took the case before the grand jury and got an indictment. This was too late. Although the hearing on Lawson's mo-

tion occurred after the indictment was returned, that was neither Lawson's fault nor a matter within her control. It is the trial judge, burdened with a heavy docket, who sets the hearing date. The defendant's job is to timely make the motion and to appear at the hearing when the trial court is able to hear the matter. Any different interpretation places an impossible burden on the defendant, and eviscerates article 32.01.

We recognize that today's holding is in conflict with some of the language of this court's holding in *Wilkinson v. State,* 899 S.W.2d 20 (Tex.App.—San Antonio 1995, pet. ref'd). To the extent that there is a conflict, we overrule those parts of *Wilkinson* that are in conflict. This harmonizes the law with the holdings in other courts of appeal that are contrary to *Wilkinson.*

### *Wilkinson* and Other Case Law Discussion

*Wilkinson,* like the present case, involved a late indictment. A habeas corpus petition was filed pursuant to articles 28.061 and 32.01. The State filed a good cause affidavit and also obtained an indictment the day before the habeas corpus hearing. The trial court denied relief on the ground of mootness. Unlike the instant case, the defendant did not file his motion for habeas corpus at the first opportunity after the State had missed their article 32.01 deadline. This court affirmed the trial court, and said:

> Thus, the key for the accused but unindicted is to seek and obtain a ruling on an article 32.01 motion prior to indictment.

*Id.* at 21.

There had been delay on the part of the defendant, as well as on the part of the State in *Wilkinson,* and this fact was a factor in the above language. Nevertheless, the *Wilkinson* language was critically reviewed by two of our sister courts. *See Ex parte Knight,* 904 S.W.2d 722 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); *Norton v. State,*

---

month seven-day delay from arrest to indictment in Bexar County is an unreasonable indictment delay when that same situation would be considered timely in Harris County. As a result, the

operation of article 28.061 imposes a less reasonable sanction for article 32.01 dismissals in some districts than in others and we invite the Legislature to reconsider this matter.

918 S.W.2d 25 (Tex.App.—Houston [14th Dist.] 1996, pet. filed).

In *Knight,* the petitioner sought article 32.01 relief by habeas corpus. The justice court had already dismissed the charges against the appellant and, with no other charges pending, the court held that the defendant's petition was moot. The court had the following to say about *Wilkinson:*

Where a defendant now has a right to dismissal of charges with prejudice whenever the State fails to timely present an indictment or information, or file an affidavit satisfactorily showing good cause for failing to do so, the harmless error reasoning of the prior cases no longer applies. We disagree with the approach in *Wilkinson,* but note the result appears to be correct because the State provided a reasonable explanation for not timely presenting an information or indictment.

*Knight,* 904 S.W.2d at 725.

In *Norton,* a marijuana delivery case, the untimely indictment spawned a writ of habeas corpus asking for dismissal of charges with prejudice because of the State's failure to meet the limitations of articles 32.01 and 28.061. The State claimed the relief should be denied because dismissal was not sought before the indictment was obtained. The court, in a well-reasoned opinion, examines several opinions that were decided before a 1987 amendment of article 28.061 made it applicable to article 32.01. The court points out that prior to that amendment there was no right to dismissal with prejudice for a violation of 32.01 because the State had the right to simply refile the charges. The 1987 amendment changed that. As a result of the amendment, if the indictment is not timely under article 32.01, the case is dismissed with prejudice.

Moreover, to hold otherwise would be to disregard the plain language of those statutes. Therefore, we hold that the filing of an indictment before a habeas corpus hearing no longer renders such a dismissal moot, and differ with the opinion in *Wilkinson* to that extent.

*Norton,* 918 S.W.2d at 28.

The *Norton* court points out that requiring the state to formally charge a defendant within a specified time is far less burdensome than requiring it to be ready for trial within a specified time. The opinion also emphasizes that article 32.01 provides an exception to dismissal where good cause is shown. *Id.* at 29.

The concurrence in the case, by Justice Hudson, wryly comments:

While the wisdom of a statute which provides immunity from prosecution for technical violations of procedural statutes may be debated, it is well established that it is within the purview of the legislature to enact foolish statutes.

*Id.* at 30.

Whether the statute is wise or foolish, it exists. It is clear. We must follow it or be derelict in our own duty. We also must face the fact that the mootness language in *Wilkinson* is incorrect. Therefore, we now hold as our sister courts have, that a writ of habeas corpus seeking relief for late indictment in violation of Article 32.01 is not moot because the indictment issues before the writ is granted or the grounds for relief determined.

This court recognizes that the *Wilkinson* language on mootness, here repudiated, could mislead a trial court into error. Certainly any trial court had the right to rely on *Wilkinson* until this time. At the hearing before the trial court the State relied on *Wilkinson* and their position that the November term, in which Lawson was arrested, did not count. We've repudiated *Wilkinson* and ruled that the November term does count. But the State may have other good cause reasons for delaying the indictment that were never explored because *Wilkinson* seemed to make the matter moot. For that reason, the State should have an opportunity to be heard on the issue of good cause for delay, if any, that does not rely on *Wilkinson.*

We remand the case to the trial court for consideration of whether or not there was good cause for the State's tardy indictment. If no good cause is found, the indictment must be dismissed with prejudice.

Concurring and dissenting opinion by DUNCAN, J.

**DUNCAN, Justice, concurring and dissenting.**

The majority opinion convinces me that the State did not show good cause in the trial court even when the record is reviewed under an abuse of discretion standard. I therefore concur, albeit reluctantly, in the majority's judgment insofar as it reverses the trial court's denial of relief. As the majority so aptly states, "[w]e must follow [article 32.01] or be derelict in our own duty."[1] But, having determined that the law requires reversal of the trial court's order, I fail to see why it does not also require rendition in Lawson's favor. I therefore respectfully dissent from the majority's judgment insofar as it remands this case to the trial court for a second good cause hearing.

### PERTINENT FACTS

At the hearing on Lawson's application, the State proferred the testimony of Melissa Priest, and presented and filed the affidavit of Sarah J. Hinojosa, to "show good cause as to why the defendant was not indicted" before the March–April grand jury term. Following the hearing, both Lawson and the State filed trial briefs. In its brief, the State argued not only that Lawson's application was moot under *Wilkinson v. State*, 899 S.W.2d 20 (Tex.App.—San Antonio 1995, pet. ref'd), but also that it had established good cause for delay. Although the magistrate recommended that relief be denied with a citation to *Wilkinson*, the trial judge signed an order denying relief without stating a reason for his ruling.

### DISCUSSION

"When the judgment or decree of the court below shall be reversed, the court *shall* proceed to render such judgment or decree as the court below should have rendered, except when it is *necessary* to remand to the court below for further proceedings." TEX.R.APP. P. 81(c) (emphasis added). Whether Lawson is entitled to the rendition of judgment in her favor thus depends upon whether it is "nec-

essary" to remand this case for a hearing on good cause. In my view, it is not.

The majority suggests that the State relied exclusively upon *Wilkinson* in the trial court and states that it is remanding so the State has "an opportunity to be heard on the issue of good cause for delay, if any . . . ." It may well be that if the State had not been heard effectively on the good cause issue because, for instance, the State had relied exclusively upon the now-overruled *Wilkinson* or an incorrect statement of the standard by which good cause was reviewed, a remand for a good cause hearing under the appropriate standard would be "necessary." *Cf. United States v. Stricklin*, 591 F.2d 1112, 1124–25 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979) (remanding "so that the government has the opportunity to carry its burden and the District Court has the opportunity to apply the proper standards in resolving the defendant's double jeopardy claims"). But neither of those possibilities, nor any similar event, has occurred in this case. As extensively discussed in the majority opinion, the State did not rest exclusively upon *Wilkinson* in the trial court; it also alleged and attempted to prove in an evidentiary hearing that there was good cause for not indicting Lawson before March 7, 1996. Nor have we changed the standard by which good cause is to be measured or otherwise deprived the State of an effective opportunity to be heard under the correct standard.

### CONCLUSION

In short, the State has already had one good cause hearing under the appropriate standard, and there is no legitimate reason for this court to provide it with another. I would therefore reverse the judgment below and render judgment dismissing the indictment against Lawson with prejudice.

1. The State has not challenged the constitutionality of article 32.01. *Cf. Harris v. State*, 827 S.W.2d 949 (Tex.Crim.App.), *cert. denied sub nom. Harris v. Texas*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App.1987).