In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00022-CV


______________________________





IN RE: ROGER DALE HINDS, JR.









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Roger Dale Hinds, Jr., an inmate within the Texas Department of Criminal
Justice-Institutional Division, has filed with this Court a petition for writ of mandamus. Hinds asks
us to direct the Honorable William R. Porter, presiding judge of the 276th Judicial District Court of
Marion County, Texas, to issue a "certificate of appealability" in Hinds' underlying criminal
conviction so that he may pursue a direct appeal with this Court. Hinds has provided copies of
several documents in support of his petition for the writ.

(1) Standard for Mandamus

 Mandamus relief is appropriate only when the record establishes (1) a clear abuse of
discretion or the violation of a duty imposed by law (which is often described as a "ministerial" act)
and (2) the absence of a clear and adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131, 132
(Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). "With respect to resolution
of factual issues or matters committed to the trial court's discretion, the reviewing court may not
substitute its judgment for that of the trial court." In re State Farm Lloyds, Inc., 170 S.W.3d 629,
632 (Tex. App.--El Paso 2005, orig. proceeding). "The relator must therefore establish that the trial
court could reasonably have reached only one decision." Id. This Court will therefore grant
mandamus relief in this case if Hinds can demonstrate that the act sought to be compelled is purely
"ministerial" and that he has no other adequate legal remedy. See State ex rel. Rosenthal, 98 S.W.3d
194, 198 (Tex. Crim. App. 2003). A remedy is not inadequate merely because it may involve more
expense or delay than obtaining an extraordinary writ. Walker, 827 S.W.2d at 842.

(2) Hinds Is Not Entitled to Relief

 The record brought forth by Hinds does not remotely suggest Hinds has previously asked the
trial court to issue a "certificate of appealability" in this case. (1) Accordingly, we cannot say the record
before us affirmatively demonstrates the trial court failed to carry out a ministerial duty. 

 We deny Hinds' petition for writ of mandamus. 

 


 Jack Carter

 Justice


Date Submitted: March 4, 2008

Date Decided: March 5, 2008

1. We are uncertain whether Hinds' use of the term "certificate of appealability" in his petition
for writ of mandamus refers to a "certification of right of appeal" under the Texas Rules of Appellate
Procedure or a "certificate of appealability" under the Federal Rules of Appellate Procedure. 
Compare Tex. R. App. P. 25.2(a)(2) (trial court's certification of defendant's right of appeal) with
Fed. R. App. P. 22(b)(1). Even if Hinds is requesting action under the Texas rules of procedure, he
has not satisfied his burden on mandamus to bring forth a record showing the trial court failed to act
on a previous request for such instrument. 


hereinafter
styled primary offense), on the 11th day of February, 1987 in cause # 13,714
. . . .

Hicks, speaking on his own behalf, moved to dismiss the indictment on the grounds of an
illegally impaneled grand jury, prosecutorial misconduct, and double jeopardy. The court
denied his motion. On January 21, 2002, Hicks' attorney also filed a written motion to
dismiss the indictment on the ground that it was not properly presented to the district court
and thus the court did not have jurisdiction to hear the cause. The court also denied this
motion. The jury found Hicks guilty of aggravated robbery, a first degree felony, (2)
 and
assessed his punishment at life imprisonment and a $10,000.00 fine. See Tex. Pen. Code
Ann. § 12.32(a) (Vernon 2003).

 Hicks first contends the trial court erred in denying his motion to dismiss the
indictment. On this point of error, (3) the pertinent facts are uncontested. The issue of
presentment of the indictment to the court presents a question of law. As a result, we
review the matter de novo. See Ex parte Mann, 34 S.W.3d 716, 718 (Tex. App.-Fort Worth
2000, no pet.).

 The Texas Constitution mandates that an indictment be presented to the court
before the court will have jurisdiction. Tex. Const. art. V, § 12(b). "[N]o person shall be
held to answer for a criminal offense, unless on an indictment of a grand jury, . . . ." Tex.
Const. art. I, § 10. The constitution also empowers the Legislature to make laws to
govern the "practice and procedures relating to the use of indictments and informations,
. . . ." Tex. Const. art. V, § 12(b).

 So, not only do we look to statutory provisions to measure the sufficiency of an
indictment, (4) we also look to statutory law to determine when and how an indictment is
presented. Tex. Const. art. V, § 12(b). An indictment is "presented" when it has been
duly acted on by the grand jury and received by the court. Tex. Code Crim. Proc. Ann. art.
12.06 (Vernon 1977). Statutory provisions also codify the necessary result, implied by a
constitutional provision, that the court lacks jurisdiction in the absence of proper
presentment:

 When a defendant has been detained in custody or held to bail for his
appearance to answer any criminal accusation before the district court, the
prosecution, unless otherwise ordered by the court, for good cause shown,
supported by affidavit, shall be dismissed and the bail discharged, if
indictment or information be not presented against such defendant on or
before the last day of the next term of the court which is held after his
commitment or admission to bail or on or before the 180th day after the date
of commitment or admission to bail, whichever date is later.


Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon Supp. 2003) (emphasis added).

From Article 32.01, we get the language at the heart of this point of error. Failure
to present an indictment on or before "the last day of the next term of the court" or "the
180th day after the date of commitment or admission to bail," whichever is later, results in
dismissal of the indictment and discharge from bail unless the state can show good cause
for the delay. Tex. Code Crim. Proc. Ann. art. 32.01; Ex parte Seidel, 39 S.W.3d 221,
223-24 (Tex. Crim. App. 2001); Mann, 34 S.W.3d at 718. Hicks contends the indictment
was not presented to the court during its term, because the court's term was in Shelby
County when the indictment was filed. Therefore, we must determine whether the 123rd
Judicial District Court was in term in Panola County at the time the indictment was filed. 
If not, the district court never obtained jurisdiction over the matter, and the indictment
should have been dismissed. (5)

Article 32.01 also adds another facet to this point of error. After resolution of a split
among the courts regarding the constitutionality of Tex. Code Crim. Proc. Ann. art. 28.061
(Vernon Supp. 2003) and its application to Article 32.01, the Texas Court of Criminal
Appeals now has held that a defendant's failure to seek dismissal of an indictment, as
untimely filed, before an indictment is returned, waives his or her right to complain. Brooks
v. State, 990 S.W.2d 278, 285 (Tex. Crim. App. 1999); Tatum v. State, 505 S.W.2d 548,
550 (Tex. Crim. App. 1974), overruled on other grounds by Comer v. State, 754 S.W.2d
656, 659 (Tex. Crim. App. 1988); see also Hixson v. State, 1 S.W.3d 160, 163 (Tex.
App.-Corpus Christi 1999, no pet.); Fisk v. State, 958 S.W.2d 506, 508-09 (Tex.
App.-Texarkana 1997, pet. ref'd). In other words, a defendant must seek to dismiss under
Article 32.01 before an indictment is returned or else error as to the timeliness of return of
the indictment is waived. See, e.g., Brooks, 990 S.W.2d at 285. That being so, Hicks'
complaint was waived if the indictment was properly returned December 19, 2001, since
his written motion to dismiss the indictment was filed January 21, 2002. 

Here, however, we find it necessary to first determine whether the indictment was,
in fact, properly presented to the district court. Previous cases challenged the indictment
primarily in terms of timeliness of return, asserting that the term in which the indictment was
presented was too late according to Article 32.01. Hicks' contention does concern
timeliness, as well, but in a more indirect manner. The primary issue brought by Hicks'
point of error is one of constitutional requirements of presentment and jurisdiction. He
argues that the district court to which the indictment alleges it was presented was not
actually in term. Proper presentment is necessary to invoke the district court's jurisdiction. 
Tex. Const. art. V, § 12(b). Therefore, if we held that error was waived when the
indictment was returned, we would be presupposing an essential matter to our examination: 
that the indictment was, in fact, presented in such a way and at such a time as to confer
jurisdiction on the district court. We will address in turn the issues of presentment of the
indictment and waiver of error on the return of the indictment. 

The Texas Legislature has the power to enact laws to govern the terms of the district
courts. Tex. Const. art. V, § 7. General provisions concerning the structure of terms for
district courts throughout the state are found in the Government Code. Tex. Gov't Code
Ann. § 24.012 (Vernon Supp. 2003). Each term is deemed "continuous" and "begins on
a day fixed by law and continues until the day fixed by law for the beginning of the next
succeeding term." Id. Specifically, the terms of the 123rd Judicial District Court begin in
Panola County on the first Mondays in January, May, and September. Tex. Gov't Code
Ann. § 24.225 (Vernon 1988). The terms of the 123rd Judicial District Court of Shelby
County begin on the first Mondays of March, July, and November. Id. This means the
September term of the 123rd Judicial District Court of Panola County begins on the first
Monday in September and ends the day before the first Monday of January. Id. To
illustrate, Tex. Gov't Code Ann. § 24.105 (Vernon Supp. 2003) directs the terms of the 5th
Judicial District Court, composed of Bowie and Cass Counties, using the same structure
and language as used in Section 24.225. See Ex parte Lawson, 966 S.W.2d 532, 534 n.4
(Tex. App.-San Antonio 1996, pet. ref'd). Discussing Section 24.105, the Lawson court
explained that the provision creates terms of the court that "stagger and overlap" one
another. Id.

Hicks relies on Webb v. State, 161 Tex. Crim. 442, 278 S.W.2d 158, 160 (1955), to
support his position the indictment should have been dismissed due to lack of jurisdiction
in the trial court. The facts in Webb, however, are distinguishable from those before us. 
In Webb, an indictment returned by a grand jury convened for a special term of court failed
to confer jurisdiction because the district court was without authority to call a special term
of the court before the adjournment of the regular term. Id. at 160. That is not the situation
here, where the indictment was returned by a grand jury convened for a regular term of
court. There simply can be no challenge of the 123rd Judicial District Court's authority to
"call" a regular term.

The September term of the 123rd Judicial District Court of Panola County began on
the first Monday of September and ended, by law, on the day before the first Monday in
January, the day before the January term of the court began. The indictment was filed
December 19, 2001, a date clearly falling within the September term of the 123rd Judicial
District Court of Panola County. It is to this court the grand jury presented the indictment. 
Presentment of this indictment to the court during its term was, therefore, sufficient to
confer jurisdiction in the district court under Article V, § 12(b) of the Texas Constitution. 

The conclusion the indictment was properly presented to the district court also leads
us to hold that Hicks' failure to object to the indictment before its proper and timely return
waives his complaint as to the denial of his motion to dismiss the indictment. We overrule
Hicks' first point of error.

In his second point of error, Hicks complains the pen packets admitted into evidence
as State's Exhibits 11 and 12 were inadmissible because the State failed to present
evidence to link Hicks to the convictions in those packets. (6)

When the State offered the pen packets as exhibits, Hicks requested to question
John Depresca, the State's fingerprint expert, on voir dire. At the end of the examination,
Hicks objected: "Not the proper predicate for admission, and there's no evidence that these
are the fingerprints of this defendant or this defendant is the same defendant in these
exhibits." 

Before we reach the substance of this issue, we must discuss the preservation of
this issue for appeal. The State argues Hicks did not preserve this matter for appeal. We
disagree.

An objection to the admission of evidence on the ground no proper predicate has
been laid is too general to merit consideration except where the specific grounds for the
objection are apparent from the context or, as some courts have held, the evidence is
inadmissible for any purpose. Canada v. State, 589 S.W.2d 452, 454 (Tex. Crim. App.
[Panel Op.] 1979); Wagner v. State, 720 S.W.2d 827, 829 (Tex. App.-Texarkana 1986, pet.
ref'd). Counsel must specifically complain of any omissions in the predicate. Wagner, 720
S.W.2d at 829. Of course, exceptions exist to the rule that a general or imprecise objection
waives error. See Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). The
Zillender court concluded that, where the grounds for objecting to the admission of
evidence are obvious to the trial court and opposing counsel, an objection that otherwise
would be too general or imprecise will preserve the issue for appeal. Id.

While it is true Hicks' proper predicate objection, if asserted alone, generally would
not be specific enough to preserve error, we do not face that situation since Hicks' objection
went on to explain his grounds for objecting sufficiently to apprise the trial court and
opposing counsel of those grounds. Hicks' objection emphasized a specific reason that he
objected to the admission of the pen packets. Taken as a whole, Hicks' objection, while
imprecise, did apprise the trial court and opposing counsel of the grounds on which counsel
sought exclusion of the evidence. Therefore, we will consider Hicks' second point of error.

We review a trial court's admission of evidence for an abuse of discretion. Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); Rachal v. State, 917 S.W.2d 799, 816
(Tex. Crim. App. 1996). During the punishment phase of a criminal trial, the state or the
defendant may present evidence the court deems relevant to sentencing, including the prior
criminal record of a defendant. Tex. Code Crim. Proc. Ann. art. 37.07, § 3 (Vernon Supp.
2003). The Texas Court of Criminal Appeals has established that pen packets are
admissible to show a defendant's prior criminal record, provided they are properly
authenticated as set forth in the Texas Rules of Evidence. Tex. R. Evid. 901, 902, 1005;
Reed v. State, 811 S.W.2d 582, 586-87 (Tex. Crim. App. 1991). Proper authentication of
the copies in the pen packets include certification by the records clerk of the Texas
Department of Criminal Justice, Institutional Division. Reed, 811 S.W.2d at 586. When an
authenticated copy of a pen packet is offered into evidence in an effort to prove a prior
conviction, it is not essential that the supporting evidence as to identification precede its
admission. Yeager v. State, 737 S.W.2d 948, 951 (Tex. App.-Fort Worth 1987, no pet.)
(citing Beck v. State, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986)).

The documents in the pen packets, while admissible, are not sufficient, standing
alone, to prove the prior convictions. Phariss v. State, 149 Tex. Crim. 406, 194 S.W.2d
1007 (1946). After the pen packet is admitted, it is incumbent on the state to show by
independent evidence the defendant is the person previously convicted. Cain v. State, 468
S.W.2d 856, 858 (Tex. Crim. App. 1971). While this is frequently done by expert testimony
identifying known fingerprints of the defendant with the fingerprints in the pen packet, there
are several other ways to establish that a defendant is the same individual convicted in the
pen packet. Beck, 719 S.W.2d at 209. These methods include: (1) testimony of a witness
who personally knows the defendant and the fact of his or her prior conviction and identifies
the defendant; (2) stipulation or judicial admission of the defendant that he or she has been
so convicted; (3) introduction of certified copies of the judgment and sentence and the
record of the Texas Department of Corrections or a county jail, including fingerprints of the
accused, supported by expert testimony identifying those fingerprints with known prints of
the defendant; and (4) comparison by the fact-finder of a record of conviction which
contains photographs and a detailed physical description of the named person, with the
appearance of the defendant, present in court. Lyle v. State, 669 S.W.2d 853, 855-56
(Tex. App.-Corpus Christi 1984, no pet.); see also Carr v. State, 715 S.W.2d 419, 421
(Tex. App.-San Antonio 1986, pet. ref'd).

Here, both pen packets included certification by the records clerk of the Texas
Department of Criminal Justice, Institutional Division, so as to be properly authenticated
and, therefore, admissible. The State then went further to present independent evidence
establishing Hicks as the individual convicted in the packets through both expert testimony
on the comparison of fingerprints and testimony that Hicks is the person whose photograph
appears in the pen packets.

The pen packets were admissible, and the evidence presented was sufficient to
establish Hicks was the individual convicted, as shown by the pen packets. The trial court
did not abuse its discretion in admitting the pen packets. We overrule Hicks' second point
of error. 

Hicks complains the trial court abused its discretion by admitting the fingerprint card
when it was not established as a business record exception to the hearsay rule. Since
counsel did not object to the admission of the fingerprint card as hearsay, its admission as
a business record is an issue that is not relevant and not before us. The ground of error
presented on appeal must be the same as the objection raised at trial. If not, an appellant
presents nothing for review. Coffey v. State, 796 S.W.2d 175, 179-80 (Tex. Crim. App.
1990); Bouchillon v. State, 540 S.W.2d 319, 322 (Tex. Crim. App. 1976).

When the evidence was offered, Hicks objected, "[T]he proper predicate has not
been laid and it's a copy." The first portion of Hicks' objection would be too general to
preserve error since the basis of the objection was not apparent and since there was no
indication opposing counsel and the trial court understood the basis for the objection. It
preserves nothing for review. The second part of this objection was not one focusing on
hearsay or an exception to the hearsay rule. See Tex. R. Evid. 801-804. Instead, it
sounded in terms of the best evidence rule, that the trial court should not admit a copy of
the fingerprint card in place of the original. See Tex. R. Evid. 1002. Hicks does not appeal
the issue of admissibility of a copy of the card over a best evidence objection and,
therefore, we cannot address the admissibility of the fingerprint card under the business
record exception to the hearsay rule or under the best evidence rule. We overrule Hicks'
third point of error.

In his fourth point of error, Hicks contends the trial court erred in allowing the State
to elicit Jeter's testimony regarding his post-arrest silence. A defendant is protected from
such testimony. An individual's silence after an officer reads him or her Miranda (7) warnings
may be nothing more than his or her exercise of these Miranda rights. See United States
v. Hale, 422 U.S. 171, 177 (1975); Griffith v. State, 55 S.W.3d 598, 604 (Tex. Crim. App.
2001). Therefore, it would be fundamentally unfair and a deprivation of due process to
allow the arrested person's silence to be used to impeach an explanation subsequently
offered at trial. Hale, 422 U.S. at 177; Griffith, 55 S.W.3d at 604.

Hicks failed to preserve this issue for review, however, having made no objection
at the time the evidence was offered. In order to preserve error for review, the record must
show that the party opposing admission of the evidence made a timely and specific
objection to its admission and that the trial court made an express or implied ruling on the
objection. Tex. R. App. P. 33.1; Tex. R. Evid. 103. If the trial court refuses to rule on the
objection, the party opposing admission can preserve error by objecting to the court's
refusal to rule. Tex. R. App. P. 33.1.

Here, we simply do not have such an objection and the issue, therefore, is not
properly before us. (8) Any error as to the admissibility of this testimony was waived by
failure to object to it at trial. We overrule Hicks' fourth point of error.

We affirm the judgment of the trial court.




 Donald R. Ross

 Justice


Date Submitted: February 25, 2003

Date Decided: August 8, 2003


Do Not Publish
1. The jury's verdict assessing punishment included a $10,000.00 fine. The trial
court's judgment and sentence, however, omit any reference to a fine.
2. At the punishment phase, the State sought to enhance punishment through
evidence of two prior felony convictions. However, it was not allowed to do so. The Penal
Code allows enhancement based on prior felony convictions when the state's allegations
show that the first conviction became final before the commission of the offense underlying
the second conviction. See Tex. Pen. Code Ann. § 12.42(d) (Vernon 2003). Here, the
allegations showed that the first conviction did not become final until his community
supervision was revoked September 20, 1990, a date subsequent to February 27, 1990,
the date Hicks committed the second offense for which he was convicted. In other words,
Hicks' community supervision for the first offense had not been revoked at the time he
committed the second offense. See Ex parte Langley, 833 S.W.2d 141, 143 (Tex. Crim.
App. 1992). 

3. [3]The State argues Hicks failed to preserve error as to this matter. The record plainly
indicates, however, that Hicks' attorney thoroughly presented to the trial court the same
grounds asserted in the written motion to dismiss. In this exchange, the trial court
acknowledged having read the motion to dismiss, stated he was familiar with the Texas
Government Code provisions cited, and explicitly ruled Hicks' "motion will be overruled." 
Clearly, Hicks preserved his complaint on the trial court's denial of his motion to dismiss the
indictment. See Tex. R. App. P. 33.1.
4. [4]An indictment must meet certain statutory requirements. Tex. Code Crim. Proc.
Ann. art. 21.02 (Vernon 1989). An indictment must also satisfy certain requirements, less
specific than those of Article 21.02, in order to be an indictment for purposes of Tex.
Const. art. V, § 12(b). See Ex parte Gibson, 800 S.W.2d 548, 551 (Tex. Crim. App. 1990).

However, the sufficiency of the indictment as gauged by statutory or constitutional
standards is not before us. Hicks' point of error touches solely on constitutional principles
of presentment and jurisdiction. He does not challenge the sufficiency of the presentment
allegation in the indictment. In fact, that allegation seems proper and complete. Nor does
he argue that the instrument fails to qualify as an indictment according to the Texas
Constitution. Rather, Hicks attacks the State's adherence to the procedure of presenting
the indictment to the district court.
5. [5]Even if the indictment should have been dismissed, the State could seek a new
indictment for the offense because the court lacks the authority to dismiss the prosecution
with prejudice. Tex. Code Crim. Proc. Ann. art. 15.14 (Vernon 1977); Ex parte Seidel, 39
S.W.3d 221, 224 (Tex. Crim. App. 2001).
6. [6]We note, again, that ultimately the jury charge did not refer to enhancement
allegations.
7. [7]Miranda v. Arizona, 384 U.S. 436 (1966). 
8. [8]In the interest of fairness, we can say that, in any event, the testimony from Jeter
was not an improper comment on Hicks' post-arrest silence. The statement was made
during questioning about Hicks' being aware of his Miranda rights. Jeter said to Hicks,
"You know what your rights are." The district attorney asked if Hicks responded to this
statement. To this question, Jeter replied, "The defendant did not say anything." The
statement was one that was designed to illustrate that, since Hicks was not fully read his
Miranda rights again after the lineup, he was aware of his right to remain silent. 
Apparently, he was aware of that right, since he made no comment in response to Jeter's
question. The prohibition is geared toward exclusion of testimony tending to raise an
inference of guilt. See Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). In
this context, the testimony is not of the nature to fall under the prohibition of commentary
on post-arrest silence. Those present at trial appeared to share this general
understanding, since defense counsel did not object to the testimony at trial. See Smith
v. State, 721 S.W.2d 844, 854-55 (Tex. Crim. App. 1986).

Therefore, even if Hicks had preserved error on this issue, we would overrule this
point of error.