

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-89,188-01

### EX PARTE PHILLIP TIMOTHY DENNIS

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. W14-33270-L(A) IN CRIMINAL DISTRICT COURT NO. 5 FROM DALLAS COUNTY

**NEWELL, J. delivered the opinion for a unanimous Court.**

If a defendant files his application for post-conviction habeas corpus relief alleging that he is physically confined pursuant to his conviction, must he further allege collateral consequences that flow from his conviction? No. We filed and set this application to determine the appropriate disposition in light of Applicant's pleadings. One possible disposition is to dismiss the application pursuant to our decision in *Ex parte Harrington*. This would afford Applicant leave to re-file so that Applicant could allege in his writ application that he was not only

convicted and sentenced to a term of confinement, but that he also suffered collateral consequences of his conviction. Another possible disposition would be to treat Applicant's pleadings as sufficient when they were filed and consider the merits of Applicant's claims.

We believe the latter approach is better. Applicant's pleadings at the time they were filed sufficiently alleged that Applicant was confined (as that term is defined under Article 11.07 of the Code of Criminal Procedure) by virtue of his serving the sentence on his felony conviction. That his sentence discharged during the pendency of his writ did not retrospectively render his pleadings insufficient. Consequently, we will address the merits of his claims.

## Background

In 2017, Applicant was convicted of felony driving while intoxicated, and sentenced to three years' imprisonment. In 2018, he filed an application for writ of habeas corpus alleging that trial counsel was ineffective for failing to investigate whether Applicant's prior Arkansas DWI conviction should have been used as a jurisdictional enhancement in this case. Upon receiving the 2018 application we remanded the case, but we did not receive the supplemental record with findings of fact and conclusions of law from the habeas court until 2020.

Applicant's sentence discharged in 2019 while his writ application was pending.

## Analysis

The writ of habeas corpus, which Sir William Blackstone called the most celebrated writ in the English law, and others have named "the great writ of liberty," is ancient.[1]  There are references to its use prior to the signing of Magna Carta, and it was formally adopted in the Habeas Corpus Act of 1679.[2]  The writ was developed to protect against executive detention; its function was to block imprisonment by royal fiat without a judicial hearing.[3]  The writ was not an appeal device after conviction by a "legal," competent tribunal, but rather an extraordinary remedy against executive detention.[4]  Today, the writ is available only for relief from jurisdictional defects and violations of constitutional or fundamental rights.[5]

---

[1] *Ex parte Lawson*, 966 S.W.2d 532, 533 (Tex. App.—San Antonio 1996, pet. ref'd), *superseded on other grounds*.

[2] *Id.*

[3] Neil Douglas McFeeley, *The Historical Development of Habeas Corpus,* 30 SOUTHWESTERN L.J. 585 (1976).

[4] *Id.*

[5] *Ex parte McCain*, 67 S.W.3d 204, 207 (Tex. Crim. App. 2002).

The Texas Code of Criminal Procedure sets forth the following definition for the writ of habeas corpus:

> "The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to anyone having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint."[6]

Because of the unique nature of the remedy, habeas corpus relief is underscored by elements of fairness and equity.[7] These elements of fairness and equity are protected by the United States Constitution,[8] and the Texas Constitution commands that the privilege of the writ of habeas corpus shall never be suspended.[9] Further, Article 11.04 of the Texas Code of Criminal Procedure instructs that we are to construe every provision relating to the writ of habeas corpus most favorably to give effect to the remedy and protect the rights of the person seeking relief under it.[10]

## Article 11.07 and *Ex parte Harrington*

---

[6] TEX. CODE CRIM. PROC. art. 11.01.

[7] *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994).

[8] U.S. CONST. art. I, § 9, cl. 2.

[9] TEX. CONST. art. I, § 12.

[10] TEX. CODE CRIM. PROC. art. 11.04.

For a court to consider an application for writ of habeas corpus, the writ application must be complete on its face. Texas law has long required all post-conviction applicants for writs of habeas corpus to plead specific facts which, if proven to be true, might call for relief.[11] Post-conviction writ applicants must allege specific facts so that anyone reading the writ application would understand precisely the factual basis for the legal claim.[12] When an applicant fails to do so, all requested relief is denied.[13]

Article 11.07 of the Texas Code of Criminal Procedure sets forth the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death.[14] Prior to 1995, Article 11.07 did not define "confinement," and this Court repeatedly held that the statute provided relief only for

---

[11] *See, e.g., Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985) ("In a postconviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle him to relief.").

[12] *See, e.g., Ex parte Tovar*, 901 S.W.2d 484, 485-86 (Tex. Crim. App. 1995) ("In order to be entitled to post conviction collateral relief the applicant must raise a question of constitutional magnitude, alleged facts establishing the constitutional violation and, if appropriate, prove he was harmed.").

[13] *See, e.g., Ex parte Akhtab*, 901 S.W.2d 488, 490 (Tex. Crim. App. 1995) ("Because applicant does not allege or prove facts which, if true, would entitle him to relief, all requested relief is denied.")

[14] TEX. CODE CRIM. PROC. art. 11.07(1)(c).

those in custody.[15]  In 1995, the Legislature amended Article 11.07 to explicitly include collateral consequences in the definition of "confinement."[16]  As amended, Article 11.07 now defines "confinement" as "confinement for any offense or any collateral consequence resulting from the conviction . . . [.]"[17]

In Ex parte Harrington, we considered the implications of this amendment to Article 11.07.[18] After his sentence was discharged, Harrington filed an application for writ of habeas corpus alleging an involuntary plea due to ineffective assistance of counsel.  Despite the fact that the applicant was no longer in custody at the time he filed his application, he claimed he was confined under Article 11.07 as a result of present and future collateral consequences arising from his challenged conviction.[19]  There, we held that a person who has discharged his sentence prior to filing an application, but who continues to suffer collateral consequences arising from the challenged conviction,

---

[15] Ex parte Renier, 734 S.W.2d 349 (Tex. Crim. App. 1987).

[16] Acts of May 24, 1995, 74th Leg., R.S., ch. 319, § 5, sec. 3(c), 1995 Tex. Gen. Laws 2764, 2771 (eff. Sept. 1, 1995) (current version at TEX. CODE CRIM. PROC. art. 11.07, § 3(c)).

[17] TEX. CODE CRIM. PROC. art. 11.07(3)(c).

[18] Ex parte Harrington, 310 S.W.3d 452 (Tex. Crim. App. 2010).

[19] Id at 458.

is entitled to seek post-conviction habeas relief under Article 11.07.[20] We came to this conclusion after we determined that the record supported the trial judge's findings concerning adverse consequences to the applicant's present and future employment opportunities.[21] And to the extent that the trial court made findings regarding possible future collateral consequences, those findings were unnecessary to our holding given that Harrington had sufficiently alleged and proven adverse present collateral consequences flowing from his conviction.[22]

## Applicant's Pleadings Are Sufficient

As discussed above, Article 11.07 as it has been amended now defines confinement as including both confinement pursuant to a conviction and any collateral consequences that flow from a conviction. Given this definition, an applicant need not plead a collateral consequence of the conviction if, at the time of the pleading, the defendant is seeking relief from a conviction for which he is confined. Under those circumstances, the applicant has necessarily pleaded specific facts regarding his confinement, that, if proven true, would

---

[20] *Id.*

[21] *Id* at 457–58.

[22] *Id.* at 455–56 (listing five past or present collateral consequences and three future collateral consequences).

entitle him to relief (assuming the applicant has also pleaded specific facts to support a cognizable and meritorious claim).

In this case, Applicant was serving his sentence when he filed the application, thus there was no need for him to plead collateral consequences at the time he filed his application. By alleging that he was confined pursuant to his conviction, Applicant alleged facts that, if true, would establish confinement as defined in Article 11.07. Pleading collateral consequences was unnecessary, and dismissal to give Applicant an opportunity to correct the deficiency would be unnecessary. Had Applicant filed his application after he had served his sentence, Applicant would have been required under *Ex parte Harrington* to specifically allege that he suffered collateral consequences from his conviction.

<u>Applicant's Ineffective Assistance of Counsel Claim</u>

In his application, Applicant contends that he received ineffective assistance of trial counsel. Applicant claims that his trial counsel failed to investigate whether Applicant's prior Arkansas DWI conviction should have been used as a jurisdictional enhancement in this case. Having considered the habeas court's findings, we agree and conclude that Applicant's claim is without merit.

In an ineffective assistance claim, the applicant must prove that counsel erred and that the error prejudiced the defense.[23] An attorney's deficient performance prejudices an accused when there is a reasonable probability that the outcome of the trial would have been different but for counsel's deficiency.[24] One necessary facet of professional assistance is the investigation of the facts and law applicable to a case.[25] Under *Strickland*, counsel has a duty in every case to make a reasonable investigation or a reasonable decision that an investigation is unnecessary.[26] When an Applicant raises the claim that counsel was ineffective for failing to investigate, he must show what a more in-depth investigation would have shown.[27]

The habeas court recommends denying relief. Applicant's case was straightforward, and the evidence against him was substantial. According to trial counsel's affidavit, trial counsel met with Applicant, and Applicant did not like the legal opinion his trial counsel provided him. Applicant's trial counsel discussed with him in detail the

---

[23] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[24] *Cox v. State*, 389 S.W.3d 817, 81 (Tex. Crim. App. 2012).

[25] *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013).

[26] *Id.* (citing *Strickland*, 466 U.S. at 691).

[27] *Mooney v. State*, 817 S.W.2d 693, 697 (Tex. Crim. App. 1991).

jurisdictional paragraphs in the indictment that described Applicant's prior DWI convictions. At no point did Applicant take issue with either jurisdictional paragraph. The trial court found trial counsel's affidavit credible.

Applicant signed a judicial confession stipulating to the evidence, including the jurisdictional paragraphs alleging the previous Arkansas DWI. Though Applicant claims in his writ application that he was never previously convicted of a DWI in Arkansas, the record shows that Applicant was sentenced to seven days in jail and a $750.00 fine in 2005 in the Benton County, Arkansas District Court after entering a plea of guilty to DWI Second Offense. We agree with the habeas court's findings and conclusions. We deny relief.

## Conclusion

When Applicant filed his application for writ of habeas corpus, he was still actively serving his sentence. We will construe Article 11.07 favorably in order to protect the rights of the person seeking relief under it as Article 11.04 instructs. Thus, we conclude that Applicant was not required to plead collateral consequences because his pleadings were sufficient at the time that he filed the application. Having reached the merits of Applicant's claim, we hold that Applicant has failed to satisfy the first *Strickland* prong. We therefore deny relief.

Filed: December 21, 2022

Publish