

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 2-08-001-CR

---

RANDY DEAN PARNELL, JR.                                   APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two points, Appellant Randy Dean Parnell, Jr. appeals his convictions for unauthorized use of a vehicle and engaging in organized crime (theft of property valued more than $1,500 but less than $20,000).[2] We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. §§ 31.03, 71.02(a)(1) (Vernon Supp. 2008), § 31.07 (Vernon 2003).

## II. Procedural History

The State charged Parnell with unauthorized use of a vehicle and engaging in organized criminal activity (theft of property worth $1,500 to $20,000). After a pretrial hearing, the trial court overruled Parnell's motion to suppress. Parnell pleaded not guilty at trial, but the jury convicted Parnell of both charges and assessed punishment at ten years' confinement for the unauthorized use conviction and fifteen years' confinement for the organized criminal activity conviction. The trial court entered judgment on the verdict, and this appeal followed.

## III. Discussion

In his first point, Parnell complains that his motion to suppress should have been granted and that the trial court abused its discretion by failing to make written findings of fact and conclusions of law "with respect to the admissibility of evidence and statements." In his second point, he complains that he was entitled to an article 38.23 instruction in the jury charge.

### A. Suppression Hearing

Arlington Police Officer Jared Ross was the only witness to testify at the suppression hearing. For purposes of the suppression hearing, the State stipulated that in the early morning hours of January 21, 2007, Officer Ross

2

approached Parnell and another suspect, arrested them for evading detention, handcuffed them, and placed Parnell in his patrol car.

Officer Ross testified that he read the *Miranda* warnings[3] to Parnell when he arrested him, and then he asked Parnell whether he understood his rights. He testified that Parnell responded that he understood his rights. Then Officer Ross asked Parnell whether he wanted to waive those rights, and Parnell agreed to talk.

Officer Ross testified that there were three vehicles at the location where he arrested Parnell. He stated that the first question he asked Parnell after Parnell agreed to talk with him was "something to the effect of[,] ['A]re any of these vehicles legit [or] any of these vehicles legal?[']" He testified that Parnell responded, "no." Before he could ask his second question, Parnell started asking about his bond amount. Officer Ross testified,

A. . . . I was initially informed by the supervisors on scene to hold off on setting a bond until we could figure out all the charges and until a detective could have a chance to talk to him. So I advised him at that time that—at that point that there was no bond set.

Q. So you—you told that to the defendant?

A. Correct.

Q. What was his response?

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

A. He said something to the effect of, well, if there's no bond—you know, if there's no bond, then I don't feel like talking to you guys anymore.

Q. So did you stop talking to him?

A. I did.

Q. What happened after that?

A. I closed the door, I got in my car, I drove him to the police station, transported him to the jail.

Officer Ross testified that this portion of his conversation with Parnell took place while Parnell was sitting in the back of his patrol car and Officer Ross was standing outside the patrol car. He testified that his weapon was holstered and that he did not make any promises or threats to Parnell when he spoke with him.

When they arrived at the jail, Officer Ross parked in the jail sallyport area and took out a book-in information form to fill out on Parnell. He testified that he started to collect the information for the form from Parnell, such as his name, social security number, and address, and that while asking Parnell the routine book-in questions, Parnell gave him additional information about the three vehicles. Specifically, Officer Ross testified that as he and Parnell spoke,

A. I believe at some point I explained to him more about the bond process and that he would, in fact, have a bond shortly thereafter once the detective got to talk to him and once all the charges could be, you know, figured out and all the appropriate charges could be

4

filed, we knew what was going on. And he started becoming a little bit more relaxed and wanted to talk—seemed like he wanted to talk a little bit more at that point.

Q. So what did he say?

A. He started telling me that—he basically said that, you know, I'm going to be honest with you, or something to that effect, and basically began telling me exactly how—the chain of events for the past few hours.

Q. And what did he tell you?

A. He told me that a few hours prior to officers getting there to 811 Oak Street, that he and the other arrestee, Mr. Torres, and another Hispanic male that he just barely knew by the name of Juan started stealing cars in the neighborhood there on Oak Street.

Q. What else did he tell you?

A. He said that they started with a black Suburban over on Maple Street and they—that the Hispanic male that he knows as Juan located the car, somehow got into the car, defeated the ignition and drove the car away from that location. He said that the three of them then went to the area of Bowie Street where he saw—where Mr. Parnell saw the Jeep Cherokee parked at that address there on Bowie Street. He said that he remembers seeing the key in the ignition and that it was too tempting not to take. He said that he got in the Jeep and drove it away from the owner's house over to 811 North Oak.

Q. Okay. It was at the owner's house on Bowie Street?

A. Correct.

Q. And he drove it over to where you later . . . recovered some vehicles?

A. That's right.

5

Q. What else did he tell you?

A. And the last vehicle he said was the Chevy pickup truck with the Nike swoop over on Town North. He told me that—I guess Juan had located the vehicle, Juan had somehow gotten in and defeated the ignition, and that Mr. Torres then drove that pickup back to 811 North Oak Street. And shortly thereafter is when officers contacted them.

Q. Did he tell you what happened with Juan?

A. He said that Juan was by the Suburban when officers approached and that when officers began chasing him and Mr. Torres, that Juan must have ran the other way.

Q. This information that [Parnell] gave to you . . . when you were talking with him in the patrol car and in the jail . . . did you know any of that information ahead of time?

A. I didn't know any of the information to be fact. I mean, I suspected stuff.

Officer Ross testified that the police later confirmed that all three vehicles were stolen and that at least one of the vehicles was stolen around 5 a.m.—that is, a few hours before Officer Ross encountered Parnell.[4] With regard to Parnell's statement that Juan forced entry and broke the ignition on the Suburban, officers on the scene reported that the ignitions were defeated on both the Suburban and the Chevy pickup truck. And with regard to Parnell's statement that he saw a red Jeep Cherokee with the key in the ignition, Officer

---

[4] The 9-1-1 log showed that the vehicle's owner called in at 5:26 a.m.

6

Ross testified that the Jeep's owner told one of the officers that the key had been stuck in the ignition and that he left it that way overnight. He testified that Parnell's admissions and the subsequent discovery of corroborating facts led other officers to go to where the three vehicles were allegedly stolen and to talk with those vehicles' owners, and it led to the filing of theft of a vehicle charges against him.

After Officer Ross finished testifying, Parnell argued that his statements should be suppressed because they constituted a confession and were inadmissible under article 38.22, section 3(c) of the code of criminal procedure, claiming that the facts the police learned "don't show that a weapon was secreted," or anything else contemplated by the portion of the statute "about the police finding some secretive instrument with which the offense was committed or finding something that was unknown." The State responded that Parnell's statements were admissible under article 38.22, section 3(c) because there was no custodial interrogation by Officer Ross and because they were shown to be reliable—each one of the facts that Parnell told Officer Ross was later found to be true and there was no evidence of coercion.

The trial court overruled Parnell's motion. Parnell did not request findings of fact and conclusions of law at that time, nor does the record reflect that he subsequently filed a motion to request them.

7

**B. Preservation of Error**

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). And the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

Although Parnell now argues that "[b]ecause the statements were conditioned upon the condition of getting bond[,] they cannot be said to be legally valid or voluntary," he did not present this argument to the trial court. Therefore, he has not preserved this argument for appeal. *See* Tex. R. App. P. 33.1; *Heidelberg*, 144 S.W.3d at 537. Furthermore, although Parnell cites

8

article 38.22 of the code of criminal procedure and *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006), to support his argument that the trial court was required to make written findings of fact and conclusions of law, neither apply to this particular situation. The article 38.22, section six fact-finding and conclusion requirement applies only where a question is raised as to the voluntariness of a statement of an accused, which Parnell did not argue at the suppression hearing. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005) (stating that in all cases where a question is raised as to the voluntariness of an accused's statement, the court must make an independent finding as to whether the statement was made under voluntary conditions and enter an order stating its conclusion and the specific fact findings upon which the conclusion is based). And *Cullen* just states that "*upon the request* of the losing party on a motion to suppress evidence, the trial court shall state its essential findings." 195 S.W.3d at 699 (emphasis added). Parnell made no request to the trial court for findings of fact and conclusions of law, either at the pretrial hearing or in a subsequent motion. Therefore, Parnell has also failed to preserve this portion of his complaint for our review. *See* Tex. R. App. P. 33.1.

## C. Motion to Suppress

Finally, we review the trial court's ruling on Parnell's motion to suppress under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).[5] When, as here, the record is silent on the reasons for the trial court's ruling, there are no explicit fact findings, and (as addressed above) neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal

---

[5] That is, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

10

ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling, and we must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740  (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

The only argument Parnell made at the suppression hearing was that his statements were inadmissible under article 38.22 of the code of criminal procedure, and Parnell's only complaint on appeal that comports with this argument is that "[b]ecause the fruits of the statement were already known[,] it cannot be said that [Parnell's] statements led the officers to recover the vehicles."

Article 38.22, section 3(a) provides that an accused's oral statements made as a result of custodial interrogation are generally inadmissible. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a).  However, under section 3(c), oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if at the time they were made they contained assertions

11

unknown by law enforcement but later corroborated.[6] *Moore v. State*, 999

S.W.2d 385, 400 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216 (2000).

Such oral statements need only circumstantially demonstrate the defendant's

guilt, and if such an oral statement contains even a single assertion of fact

found to be true and conducive to establishing the defendant's guilt, then the

statement is admissible in its entirety. *Id.* at 401; *see also Cameron v. State*,

988 S.W.2d 835, 844–45 (Tex. App.—San Antonio 1999, pet. ref'd), *cert.

denied*, 528 U.S. 1166 (2000). Facts "found to be true" means those "facts

about which the police [were] unaware at the time of the confession [that] are

later, after [the] confession, found to be true." *Gunter v. State*, 858 S.W.2d

430, 448 (Tex. Crim. App.), *cert. denied*, 510 U.S. 921 (1993), *overruled on

other grounds by Riley v. State*, 889 S.W.2d 290 (Tex. Crim. App. 1994). The

provision, "finding of secreted or stolen property or the instrument with which

he states the offense was committed," is not a limitation on the statements

---

[6] Section 3(c) states,

> Subsection (a) of this section shall not apply to any statement
> which contains assertions of facts or circumstances that are found
> to be true and which conduce to establish the guilt of the accused,
> such as the finding of secreted or stolen property or the instrument
> with which he states the offense was committed.

Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c).

12

that may be found to be true and conduce to establish guilt. *Gunter,* 858 S.W.2d at 447 – 8. Oral statements made by an accused need not lead to or result in the discovery of incriminating evidence so long as the requirements of section 3(c) are met. *Id*.

Based on the hearing testimony, in which Officer Ross testified that all he had were suspicions before other police officers later confirmed Parnell's information, we conclude that the trial court did not err by denying Parnell's motion to suppress. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c); *Moore*, 999 S.W.2d at 400; *Gunter*, 858 S.W.2d at 448. We overrule the remaining portion of Parnell's first point.

**D. Jury Charge**

In his second point, Parnell complains that a jury instruction under article 38.23 should have been given because he was interrogated while in custody and the jury needed that instruction to determine the validity of his statements.

The following conversation ensued during the charge conference:

The Court: Have both sides looked at the charge?

[State]: State has, Your Honor.

[Parnell]: Defense has looked at the charge, and we request that on page 5 it says, "No evidence or statements obtained by an officer."

[State]: Judge, the statute actually reads, no evidence obtained by an officer. The charge can track the statute, just track the statute.

13

The Court: All right. I'll look at that and consider it before we read it. At this time, I'll overrule you, but I'll try to find something tonight.

[State]: I just have something, if the issue is the statements, my understanding is that the only 38.23 related would be about voluntariness.

The Court: That's what I thought.

[State]: And so I don't know, this is more physical evidence, my understanding is, so there may be a charge out there on voluntariness.

[Parnell]: It goes to the statement, I might work on it myself a little tonight.

The next day, another charge conference took place.

The Court: Both sides have had a chance to look at the charge. This is different than the charge we had yesterday afternoon, and I believe that you had requested a charge yesterday afternoon that you've put in. You've now requested that that be taken out and a supplement is in there at this time; is that correct?

[Parnell]: That's correct, Your Honor. And I have no objection to the charge as it's currently—

The Court: All right. State?

[State]: No, Your Honor.

The Court: All right. Are both sides ready?

Both sides announced ready. The trial court included the following instruction in the jury charge:

You are instructed that no evidence or statements obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused in the trial of any criminal case. Pursuant to Texas Code of Criminal Procedure Article 38.22 Sec. 3(a), no oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless the statement contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

Therefore, if you believe beyond a reasonable doubt that the peace officer lawfully obtained the evidence or statement, you may consider it. If you have a reasonable doubt that the peace officer lawfully obtained the evidence or statement, you may not consider it.

Based on the record before us, Parnell forfeited his voluntariness complaint with regard to the trial court's charge by failing to preserve error. *See* Tex. R. App. P. 33.1. We overrule his second point.

### IV. Conclusion

Having overruled both of Parnell's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 26, 2009

15