COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-001-CR

 

 

RANDY DEAN PARNELL, JR.                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                           I.
Introduction

In two points, Appellant Randy Dean Parnell, Jr.
appeals his convictions for unauthorized use of a vehicle and engaging in
organized crime (theft of property valued more than $1,500 but less than
$20,000).[2]  We affirm.








                                      II.
Procedural History

The State charged Parnell with unauthorized use
of a vehicle and engaging in organized criminal activity (theft of property
worth $1,500 to $20,000).  After a
pretrial hearing, the trial court overruled Parnell=s motion
to suppress.  Parnell pleaded not guilty
at trial, but the jury convicted Parnell of both charges and assessed
punishment at ten years= confinement for the
unauthorized use conviction and fifteen years=
confinement for the organized criminal activity conviction.  The trial court entered judgment on the
verdict, and this appeal followed.

                                           III.
Discussion

In his first point, Parnell complains that his
motion to suppress should have been granted and that the trial court abused its
discretion by failing to make written findings of fact and conclusions of law Awith
respect to the admissibility of evidence and statements.@  In his second point, he complains that he was
entitled to an article 38.23 instruction in the jury charge.

A. Suppression Hearing








Arlington Police Officer Jared Ross was the only
witness to testify at the suppression hearing. 
For purposes of the suppression hearing, the State stipulated that in
the early morning hours of January 21, 2007, Officer Ross approached Parnell
and another suspect, arrested them for evading detention, handcuffed them, and
placed Parnell in his patrol car.

Officer Ross testified that he read the Miranda
warnings[3]
to Parnell when he arrested him, and then he asked Parnell whether he
understood his rights.  He testified that
Parnell responded that he understood his rights.  Then Officer Ross asked Parnell whether he
wanted to waive those rights, and Parnell agreed to talk.

Officer Ross testified that there were three
vehicles at the location where he arrested Parnell.  He stated that the first question he asked
Parnell after Parnell agreed to talk with him was Asomething
to the effect of[,] [>A]re any of these vehicles legit
[or] any of these vehicles legal?[>]@  He testified that Parnell responded, Ano.@  Before he could ask his second question,
Parnell started asking about his bond amount. 
Officer Ross testified,

A. . . . I was initially
informed by the supervisors on scene to hold off on setting a bond until we
could figure out all the charges and until a detective could have a chance to
talk to him.  So I advised him at that
time thatCat that point that there
was no bond set.

 

Q. So youCyou told that to the
defendant?

 

A. Correct.

 

Q. What was his response?








A. He said something to
the effect of, well, if there=s no bondCyou know, if there=s no bond, then I don=t feel like talking to
you guys anymore.

 

Q. So did you stop
talking to him?

 

A. I did.

 

Q. What happened after
that?

 

A. I closed the door, I got in my car, I drove
him to the police station, transported him to the jail.

Officer Ross testified that this portion of his
conversation with Parnell took place while Parnell was sitting in the back of
his patrol car and Officer Ross was standing outside the patrol car.  He testified that his weapon was holstered
and that he did not make any promises or threats to Parnell when he spoke with
him.

When they arrived at the jail, Officer Ross
parked in the jail sallyport area and took out a book-in information form to
fill out on Parnell.  He testified that
he started to collect the information for the form from Parnell, such as his
name, social security number, and address, and that while asking Parnell the
routine book-in questions, Parnell gave him additional information about the
three vehicles.  Specifically, Officer
Ross testified that as he and Parnell spoke,








A. I believe at some
point I explained to him more about the bond process and that he would, in
fact, have a bond shortly thereafter once the detective got to talk to him and
once all the charges could be, you know, figured out and all the appropriate
charges could be filed, we knew what was going on.  And he started becoming a little bit more
relaxed and wanted to talkCseemed like he wanted to talk a little bit more
at that point.

 

Q. So what did he say?

 

A. He started telling me
thatChe basically said that,
you know, I=m going to be honest with
you, or something to that effect, and basically began telling me exactly howCthe chain of events for
the past few hours.

 

Q. And what did he tell
you?

 

A. He told me that a few
hours prior to officers getting there to 811 Oak Street, that he and the other
arrestee, Mr. Torres, and another Hispanic male that he just barely knew by the
name of Juan started stealing cars in the neighborhood there on Oak Street.

 

Q. What else did he tell
you?

 

A. He said that they
started with a black Suburban over on Maple Street and theyCthat the Hispanic male
that he knows as Juan located the car, somehow got into the car, defeated the
ignition and drove the car away from that location.  He said that the three of them then went to
the area of Bowie Street where he sawCwhere Mr. Parnell saw the Jeep Cherokee parked at
that address there on Bowie Street.  He
said that he remembers seeing the key in the ignition and that it was too
tempting not to take.  He said that he got
in the Jeep and drove it away from the owner=s house over to 811 North Oak.

 

Q. Okay.  It was at the owner=s house on Bowie Street?

 

A. Correct.

 

Q. And he drove it over
to where you later . . . recovered some vehicles?

 

A. That=s right.








Q. What else did he tell
you?

 

A. And the last vehicle
he said was the Chevy pickup truck with the Nike swoop over on Town North.  He told me thatCI guess Juan had located
the vehicle, Juan had somehow gotten in and defeated the ignition, and that Mr.
Torres then drove that pickup back to 811 North Oak Street.  And shortly thereafter is when officers
contacted them.

 

Q. Did he tell you what
happened with Juan?

 

A. He said that Juan was
by the Suburban when officers approached and that when officers began chasing
him and Mr. Torres, that Juan must have ran the other way.

 

Q. This information that
[Parnell] gave to you . . . when you were talking with him in the patrol car
and in the jail . . . did you know any of that information ahead of time?

 

A. I didn=t know any of the
information to be fact.  I mean, I
suspected stuff.

 








Officer Ross testified that the police later
confirmed that all three vehicles were stolen and that at least one of the
vehicles was stolen around 5 a.m.Cthat is,
a few hours before Officer Ross encountered Parnell.[4]  With regard to Parnell=s
statement that Juan forced entry and broke the ignition on the Suburban,
officers on the scene reported that the ignitions were defeated on both the
Suburban and the Chevy pickup truck.  And
with regard to Parnell=s statement that he saw a red
Jeep Cherokee with the key in the ignition, Officer Ross testified that the
Jeep=s owner
told one of the officers that the key had been stuck in the ignition and that
he left it that way overnight.  He
testified that Parnell=s admissions and the subsequent
discovery of corroborating facts led other officers to go to where the three
vehicles were allegedly stolen and to talk with those vehicles= owners,
and it led to the filing of theft of a vehicle charges against him.

After Officer Ross finished testifying, Parnell
argued that his statements should be suppressed because they constituted a
confession and were inadmissible under article 38.22, section 3(c) of the code
of criminal procedure, claiming that the facts the police learned Adon=t show
that a weapon was secreted,@ or
anything else contemplated by the portion of the statute Aabout
the police finding some secretive instrument with which the offense was
committed or finding something that was unknown.@  The State responded that Parnell=s
statements were admissible under article 38.22, section 3(c) because there was
no custodial interrogation by Officer Ross and because they were shown to be
reliableCeach one
of the facts that Parnell told Officer Ross was later found to be true and
there was no evidence of coercion.

The trial court overruled Parnell=s
motion.  Parnell did not request findings
of fact and conclusions of law at that time, nor does the record reflect that
he subsequently filed a motion to request them.








B. Preservation of Error

To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State,
983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App.
2004).  And the complaint made on appeal
must comport with the complaint made in the trial court or the error is
forfeited.  Heidelberg v. State,
144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Bell v. State, 938 S.W.2d
35, 54 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 (1997); Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).








Although Parnell now argues that A[b]ecause
the statements were conditioned upon the condition of getting bond[,] they
cannot be said to be legally valid or voluntary,@ he did
not present this argument to the trial court. 
Therefore, he has not preserved this argument for appeal.  See Tex. R. App. P. 33.1; Heidelberg,
144 S.W.3d at 537.  Furthermore, although
Parnell cites article 38.22 of the code of criminal procedure and State v.
Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006), to support his argument that
the trial court was required to make written findings of fact and conclusions
of law, neither apply to this particular situation.  The article 38.22, section six fact-finding
and conclusion requirement applies only where a question is raised as to the
voluntariness of a statement of an accused, which Parnell did not argue at the
suppression hearing.  See Tex.
Code Crim. Proc. Ann. art. 38.22, ' 6
(Vernon 2005) (stating that in all cases where a question is raised as to the
voluntariness of an accused=s
statement, the court must make an independent finding as to whether the
statement was made under voluntary conditions and enter an order stating its
conclusion and the specific fact findings upon which the conclusion is
based).  And Cullen just states
that Aupon the
request of the losing party on a motion to suppress evidence, the trial court
shall state its essential findings.@  195 S.W.3d at 699 (emphasis added).  Parnell made no request to the trial court
for findings of fact and conclusions of law, either at the pretrial hearing or
in a subsequent motion.  Therefore,
Parnell has also failed to preserve this portion of his complaint for our
review.  See Tex. R. App. P. 33.1.








C. Motion to Suppress








Finally, we review the trial court=s ruling
on Parnell=s motion to suppress under a
bifurcated standard.  Amador v. State,
221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).[5]  When, as here, the record is silent on the
reasons for the trial court=s
ruling, there are no explicit fact findings, and (as addressed above) neither
party timely requested findings and conclusions from the trial court, we imply
the necessary fact findings that would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling, and we must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); State v.
Kelly, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006); Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004).

The only argument Parnell made at the suppression
hearing was that his statements were inadmissible under article 38.22 of the
code of criminal procedure, and Parnell=s only
complaint on appeal that comports with this argument is that A[b]ecause
the fruits of the statement were already known[,] it cannot be said that
[Parnell=s]
statements led the officers to recover the vehicles.@













Article 38.22, section 3(a) provides that an
accused=s oral
statements made as a result of custodial interrogation are generally
inadmissible.  See Tex. Code Crim.
Proc. Ann. art. 38.22, ' 3(a).  However, under section 3(c), oral statements
asserting facts or circumstances establishing the guilt of the accused are
admissible if at the time they were made they contained assertions unknown by
law enforcement but later corroborated.[6]  Moore v. State, 999 S.W.2d 385, 400
(Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216 (2000).  Such oral statements need only
circumstantially demonstrate the defendant=s guilt,
and if such an oral statement contains even a single assertion of fact found to
be true and conducive to establishing the defendant=s guilt,
then the statement is admissible in its entirety.  Id. at 401; see also Cameron v. State,
988 S.W.2d 835, 844B45 (Tex. App.CSan
Antonio 1999, pet. ref=d), cert. denied, 528
U.S. 1166 (2000).  Facts Afound to
be true@ means
those Afacts about
which the police [were] unaware at the time of the confession [that] are later,
after [the] confession, found to be true.@  Gunter v. State, 858 S.W.2d 430, 448
(Tex. Crim. App.), cert. denied, 510 U.S. 921 (1993), overruled on
other grounds by Riley v. State, 889 S.W.2d 290 (Tex. Crim. App.
1994).  The provision, Afinding
of secreted or stolen property or the instrument with which he states the
offense was committed,@ is not a limitation on the
statements that may be found to be true and conduce to establish guilt.  Gunter, 858 S.W.2d at 447 B 8.  Oral statements made by an accused need not
lead to or result in the discovery of incriminating evidence so long as the
requirements of section 3(c) are met.  Id.

Based on the hearing testimony, in which Officer
Ross testified that all he had were suspicions before other police officers later
confirmed Parnell=s information, we conclude that
the trial court did not err by denying Parnell=s motion
to suppress.  See Tex. Code Crim.
Proc. Ann. art. 38.22, ' 3(c); Moore, 999
S.W.2d at 400; Gunter, 858 S.W.2d at 448.  We overrule the remaining portion of Parnell=s first
point.

D. Jury Charge

In his second point, Parnell complains that a
jury instruction under article 38.23 should have been given because he was
interrogated while in custody and the jury needed that instruction to determine
the validity of his statements.

The following conversation ensued during the
charge conference:

The Court: Have both
sides looked at the charge?

 

[State]: State has, Your
Honor.

 

[Parnell]: Defense has
looked at the charge, and we request that on page 5 it says, ANo evidence or statements
obtained by an officer.@

 

[State]: Judge, the
statute actually reads, no evidence obtained by an officer.  The charge can track the statute, just track
the statute.








The Court: All
right.  I=ll look at that and
consider it before we read it.  At this
time, I=ll overrule you, but I=ll try to find something
tonight.

 

[State]: I just have
something, if the issue is the statements, my understanding is that the only
38.23 related would be about voluntariness.

 

The Court: That=s what I thought.

 

[State]: And so I don=t know, this is more
physical evidence, my understanding is, so there may be a charge out there on
voluntariness.

 

[Parnell]: It goes to the statement, I might work
on it myself a little tonight.

The next day, another charge conference took place.

The Court: Both sides
have had a chance to look at the charge. 
This is different than the charge we had yesterday afternoon, and I
believe that you had requested a charge yesterday afternoon that you=ve put in.  You=ve now requested that that be taken out and a
supplement is in there at this time; is that correct?

 

[Parnell]: That=s correct, Your
Honor.  And I have no objection to the
charge as it=s currentlyC

 

The Court: All
right.  State?

 

[State]: No, Your Honor.

 

The Court: All right.  Are both sides ready?

Both sides announced ready.  The
trial court included the following instruction in the jury charge:








You are instructed that no evidence or statements obtained by an
officer or other person in violation of any provisions of the Constitution or
laws of the State of Texas or the Constitution or laws of the United States of
America, shall be admitted in evidence against the accused in the trial of any
criminal case.  Pursuant to Texas Code of
Criminal Procedure Article 38.22 Sec. 3(a), no oral or sign language statement
of an accused made as a result of custodial interrogation shall be admissible
against the accused in a criminal proceeding unless the statement contains
assertions of facts or circumstances that are found to be true and which
conduce to establish the guilt of the accused, such as the finding of secreted
or stolen property or the instrument with which he states the offense was
committed.

 

Therefore, if you believe beyond
a reasonable doubt that the peace officer lawfully obtained the evidence or
statement, you may consider it.  If you
have a reasonable doubt that the peace officer lawfully obtained the evidence
or statement, you may not consider it.

Based on the record before us, Parnell forfeited
his voluntariness complaint with regard to the trial court=s charge
by failing to preserve error.  See
Tex. R. App. P. 33.1.  We overrule his
second point.

                                          IV.
Conclusion

Having overruled both of Parnell=s
points, we affirm the trial court=s
judgment.

PER CURIAM

PANEL: MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 26, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. '' 31.03, 71.02(a)(1)
(Vernon Supp. 2008), ' 31.07 (Vernon 2003).





[3]See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966).





[4]The 9-1-1 log showed that
the vehicle=s owner called in at 5:26
a.m.





[5]That is, the trial judge
is the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to
the trial court=s rulings on (1)
questions of historical fact, even if the trial court=s determination of those
facts was not based on an evaluation of credibility and demeanor, and (2)
application‑of‑law‑to‑fact questions that turn on an
evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App.
2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App.
2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s rulings on those
questions de novo.  Amador, 221
S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Johnson, 68 S.W.3d at 652B53.





[6]Section 3(c) states, 

 

Subsection (a) of this
section shall not apply to any statement which contains assertions of facts or
circumstances that are found to be true and which conduce to establish the
guilt of the accused, such as the finding of secreted or stolen property or the
instrument with which he states the offense was committed.

 

Tex. Code Crim. Proc.
Ann. art. 38.22, ' 3(c).